## A97A1534. LONGINO v. BANK OF ELLIJAY et al.

(491 SE2d 81)

ELDRIDGE, Judge.

The appellant, John T. Longino, who is an attorney, filed suit in the case sub judice against the appellees, the Bank of Ellijay and Paul Nealey, President of the Bank of Ellijay, seeking damages in the amount of $400,000 that was paid in settlement of a malpractice case filed against the appellant by his former client E. J. Fernandez as trustee of the Ellijay Medical Center, P. C. Pension & Profit Sharing Plans; damages for the termination of his contract of employment by Fernandez; general damages to his profession and business; and exemplary or punitive damages. The complaint asserts theories of liability for: (1) fraud and (2) Georgia RICO.

The facts which give rise to the case sub judice originate from a series of underlying actions, an understanding of which is necessary for purposes of a proper disposition. During late September 1991, the appellant was retained by Fernandez to represent him in litigation regarding his purchase of three notes ("the notes") from the Bank of Ellijay. Fernandez had previously purchased the notes, which were collateralized by stock in the North Georgia Regional Medical Center, in order to gain control of the hospital and thereby re-obtain staff privileges at the hospital. At the time Fernandez purchased the notes, they were in default. In order to purchase the notes, Fernandez obtained a loan from the Bank of Dahlonega in the amount of $1,068,547.11, and executed a promissory note, individually and as president of Ellijay Medical Center, P. C., which granted the Bank of Dahlonega a security interest in certain real property of Fernandez and Ellijay Medical Center, P. C. including, but not limited to, general intangibles, accounts, accounts receivables, promissory notes, and other personal property. Shortly thereafter, the assets (not the stock) of North Georgia Regional Medical Center were sold to a new entity, leaving Fernandez with valueless stock in a corporate shell.

The appellant, as a disclosed agent and attorney acting on behalf of Fernandez and Ellijay Medical Center, P. C., orally and by letters dated November 20, 1991, and November 25, 1991, requested that the Bank of Ellijay redeem the certificates of deposit held by the bank and directed that the proceeds from the certificates of deposits be placed in a cashier's check made payable to "Ellijay Medical Center." Even though the original certificates of deposit were in Fernandez's office, his office manager was sick, and Fernandez was unable to locate his copies; the appellant had been unable to obtain copies from the bank. Rather than wait until the original certificates of deposit could be found, the appellant proceeded with the redemption of the certificates. Therefore, when the appellant requested the redemption of the certificates, he had not seen a copy of the certifi-

cates of deposit and relied upon erroneous information provided by his client, not by the bank. The certificates of deposit were actually in the names of "Ellijay Medical Center Profit Sharing Plan" and "Ellijay Medical Center Pension Plan," which were protected by the Employee Retirement Income Security Act ("ERISA").

On November 27, 1991, the Bank of Ellijay redeemed the certificates of deposit as directed by the appellant on Fernandez's instructions and issued two cashier's checks in the amounts of $502,020.98 and $455,541.29, payable to Ellijay Medical Center, P. C., which resulted in the funds no longer being under ERISA protection. Prior to Fernandez taking actual possession of the two cashier's checks, the Bank of Dahlonega, based on Fernandez's default under the promissory note, provided the Bank of Ellijay with written notice of their perfected security interest in the property of Fernandez and Ellijay Medical Center, P. C.

In order to determine the proper recipient of the funds, the Bank of Ellijay filed an interpleader action in the Superior Court of Lumpkin County, Civil Action File Number 91-CV-401-B, and interpled the funds held in the cashier's checks. Contemporaneously with the filing of the interpleader, the appellant, as attorney for Fernandez, filed a separate suit against the Bank of Ellijay, the Bank of Dahlonega, Glen Marshall and Nealey, Civil Action File Number 91V-539, alleging securities fraud in the sale of the notes to Fernandez ("securities action"). See *Fernandez v. Bank of Dahlonega*, 217 Ga. App. 739 (459 SE2d 424) (1995).

The trial court held that the Bank of Dahlonega was entitled to the interpled funds as a consequence of the appellant's actions in directing how the funds were to be paid, and the trial court in the securities action rendered a judgment in favor of the defendants. Hence, a malpractice action against the appellant resulted, which was settled.

With this factual scenario in mind, we now turn back to the case sub judice. The appellant, in this case, alleges that deceptive misstatements and concealment of material facts were made to him by the Bank of Ellijay and Nealey, i.e., not informing him that the funds were held in the name of Ellijay Medical Center Pension & Profit Sharing Plan; not informing him that the funds were held in an ERISA protected account; not providing him with copies of the certificates of deposit; telling him that the bank did not have copies of the certificates of deposit when, in fact, it did; and not informing him that the Bank of Ellijay had issued and was holding the cashier's checks payable to Ellijay Medical Center, P. C. because of the security interest of the Bank of Dahlonega. The appellant contends that because of these actions on the part of the appellees, he did not rescind his order to issue the money out of the ERISA protected

accounts, and thus, the appellees should be liable to him in fraud for the damages previously set forth. The appellant also filed a Georgia RICO claim based on violations of OCGA § 10-5-12. The appellees filed a motion for summary judgment, which was granted by the trial court. It is from this grant of summary judgment that the appellant appeals.

1. The appellant, in his first two enumerations of error, alleges that the trial court erred in determining that the appellees had no duty to inform appellant as to the status of the certificates of deposit when the appellant had equal access to copies of the certificates of deposit, as well as information from his client during the critical time frame. We do not agree.

The tort of fraud has five elements: (1) that the defendant made a false representation; (2) that at the time he made the representation, he knew that the representation was false; (3) that he made the representation with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff reasonably relied on such representations; and (5) that the plaintiff sustained loss and damages as the proximate result of the representations having been made. *Fuller v. Perry*, 223 Ga. App. 129 (476 SE2d 793) (1996); *Lister v. Scriver*, 216 Ga. App. 741 (456 SE2d 83) (1995); *Brown v. Ragsdale Motor Co.*, 65 Ga. App. 727 (16 SE2d 176) (1941). Summary judgment is appropriate if one essential element of the appellant's claim is eliminated. *Fuller v. Perry*, supra; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

"Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action." OCGA § 51-6-2 (a); see also *Smith v. Wilfong*, 218 Ga. App. 503 (462 SE2d 163) (1995). "While concealment of material facts may amount to fraud when the concealment is of intrinsic qualities the other party could not discover by the exercise of ordinary care, in an arms-length business or contractual relationship there is no obligation to disclose information which is equally available to both parties. Under such circumstances, actionable fraud cannot be shown unless the party alleging fraud exercised due care to discover the fraud. There is no legal relief afforded when one blindly relied on the representations [or lack of representations] of the other party as to matters of which he could have informed himself." (Citations and punctuation omitted.) *First Union Nat. Bank v. Gurley*, 208 Ga. App. 647, 649 (431 SE2d 379) (1993).

Further, pretermitting that there was no material misrepresentation made to the appellant, there was no fiduciary or other special relationship between the appellant, the Bank of Ellijay, and Nealey that would justify the appellant's blind reliance. "[A] bank owes no legal duty to act as a customer's legal or financial advisor." *First*

*Union Nat. Bank v. Gurley,* supra at 648. "A fiduciary or confidential relationship arises where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agents, etc. OCGA § 23-2-58. The mere fact that one reposes trust and confidence in another does not create a confidential relationship." (Punctuation omitted.) Id. at 648-649. Thus, no such fiduciary relationship existed and no representations were made which would justify reliance if representations were, in fact, made.

Under the facts of the case sub judice, in addition to Fernandez having the original certificates of deposit in his possession, it can also be assumed that Fernandez would receive regular reports or statements from the bank regarding how much interest had been paid on the certificates and information about renewal if the certificates reached maturity, which information would contain the name the certificates were in, maturity date, and other information. The appellant, as disclosed agent for Fernandez, acted on information he received about the account from Fernandez and not the bank. Clearly, the information the appellant was seeking was contained in these documents in Fernandez's possession. Therefore, the appellees were under no obligation to provide the appellant with information to which he had equal access, and under such facts, the appellant could not reasonably rely on any alleged representations or concealment of facts by the appellees. The trial court did not err in granting summary judgment on such theory of liability.

2. In the appellant's third and fourth enumerations of error he alleges that the trial court erred when ruling on the RICO claim in finding that the appellant was in privity with Fernandez in the prior action and in finding that the appellant lacked standing to bring a claim under Georgia RICO. Again, we do not agree.

The initial question that this Court must address is whether the appellant had standing to bring a RICO action under the facts of the case sub judice. The appellant has alleged as the predicate acts to a RICO action that the appellees were engaged in securities fraud in violation of OCGA § 10-5-12; specifically, that the appellees committed crimes chargeable under OCGA § 16-14-3 (9) (A) (ix) and (xxi). Such claims are based on allegations stemming from Fernandez's July 1990 purchase of the notes from the Bank of Ellijay and would have to give the appellant some derivative right of action therefrom for the purposes of standing.

In order for an individual to recover under RICO, his injuries "must 'flow from the commission of the predicate acts.' *Sedima[, S.P.R.L. v. Imrex Co.,* 473 U. S. 479 (105 SC 3275, 87 LE2d 346)

(1985)]. This means that a private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts. A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." *Pelletier v. Zweifel*, 921 F2d 1465, 1497 (11th Cir. 1991). "[A] plaintiff has standing to sue under [RICO] only if his injury flowed directly from the commission of the predicate acts. See *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987). This means that, when the alleged predicate act is [violative of OCGA § 10-5-12], the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme. [Cits.]" Id. at 1499-1500. Such was not the case with the appellant.

The purported acts which the appellant alleges give rise to the predicate acts are: (1) that the appellees represented to Fernandez that by purchasing the defaulted notes he would acquire the securities which were pledged as collateral and thereby acquire majority control of the corporation that owned the local hospital, which would enable Fernandez to regain his staff privileges at the hospital; and (2) that the appellees knew at the time they made these representations that the assets of the corporation were in the process of being sold, that Fernandez would be left with securities which had no value, and that the stock would not give Fernandez control of the hospital. Such issues were previously adjudicated adversely to Fernandez.

However, all of these acts occurred prior to the appellant's representation of Fernandez. The appellant was not involved in the sale of the notes in any manner, either individually or as attorney for Fernandez. Appellant's first involvement came after the sale of the notes had concluded, the assets of the corporation had been sold, and Fernandez had discovered the stock, which was collateral for the notes, was worthless. It was only after all of these events had occurred that Fernandez approached the appellant for advice on what legal action to take.

The appellant was not the target of any alleged prior scheme to defraud. There was no causal connection between the sale of the notes, which were collateralized by the securities, and the injuries of which the appellant complains. Since the appellant's injuries did not flow directly from the commission of the predicate acts, he has no standing to bring a RICO action. Since the appellant lacks standing to bring a RICO action in the first place, we do not reach the appellant's third enumeration of error. The trial judge did not err in granting summary judgment.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED JULY 28, 1997 —
RECONSIDERATION DENIED AUGUST 7, 1997 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*John T. Longino*, pro se.
*James D. Parks*, for appellees.