James **HUDDLESTON as the Representative of Elizabeth Irene Huddleston, deceased, and as the Executor of the Will and Estate of Elizabeth Irene Huddleston, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, Defendant.**

No. CIVA1:98–CV–1865–TWT.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 16, 1999.

Gary P. Bunch, Office of Gary Bunch, Atlanta, GA, for plaintiff.

Stephanie Ethel Parker, Michael Joseph McConnell, Shannon Arthur Singleton, Jones Day Reavis & Pogue, Atlanta, GA, defendant.

## ORDER

THRASH, District Judge.

This is a civil RICO and fraud action against a tobacco company brought by the spouse of a deceased cigarette smoker. It is before the Court on the Defendant's (1) First Motion for Summary Judgment [Doc. 16]; (2) Motion to File Supplementary Brief in Support of First Motion for Summary Judgment [Doc. 32]; (3) Motion to Strike Certain Portions of the Plaintiff's Affidavit filed in Response to First Motion for Summary Judgment [Doc. 33]; (4) Second Motion for Summary Judgment [Doc. 46]; and (5) Motion to Submit Supplemental Authority in Support of First Motion for Summary Judgment [Doc. 47]. The Defendant's unopposed Motion to Submit Supplemental Authority [Doc. 47] is granted. The Plaintiff has filed no written opposition to the Defendant's Motions to File Supplementary Brief and to Strike Certain Portions of the Plaintiff's Affidavit. The Defendant's unopposed Motion to File Supplementary Brief [Doc. 32] is therefore granted. The Plaintiff filed his Affidavit in response to the Defendant's First Motion for Summary Judgment. (Doc. 24, Plaintiff's Affidavit). The Defendant seeks to strike paragraphs 5, 6, 7, 14 and 15 of the Plaintiff's Affidavit as contradictory to his sworn deposition testimony. The Court

finds that the Plaintiff's testimony in these paragraphs does contradict the testimony in the Plaintiff's deposition. (Plaintiff's Dep. at 98–113, 184, 213–214). Thus, in addition to being unopposed, the Defendant's Motion to Strike paragraphs 5, 6, 7, 14, and 15 of the Plaintiff's affidavit [Doc. 33] is granted because statements in an affidavit that contradict sworn deposition testimony cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 658–59 (11th Cir.1984). The Court will grant the first summary judgment motion for the reasons stated below. The second summary judgment motion is denied as moot.

## I. BACKGROUND

This is a diversity case brought by Plaintiff James Huddleston against Defendant R.J. Reynolds, a New Jersey corporation having its principal place of business in North Carolina. The Defendant manufactures, advertises, promotes and sells cigarettes throughout the United States including Georgia. The Plaintiff brings this action as the survivor of his wife, Elizabeth Irene Huddleston, who died on March 30, 1998, and as the executor of her estate. In the Complaint, it is alleged that Mrs. Huddleston smoked the Defendant's cigarettes from the time she began smoking in 1939 or 1940 until her death in 1998.

In his Amended Complaint, the Plaintiff alleges that his wife died from metastatic oat cell carcinoma, which was allegedly caused by her smoking cigarettes manufactured by the Defendant. The Plaintiff alleges that the Defendant deliberately exposed her to cigarettes the company knew to be hazardous. Plaintiff alleges she became addicted to cigarettes because of the Defendant's tortious conduct. This tortious conduct stems from Defendant's alleged knowledge of the harmful health effects caused by cigarettes. The Plaintiff alleges that the Defendant (1) has spent millions of dollars each year in advertising and promoting cigarettes; (2) has made public statements and advertisements stating that tobacco smoking is not harmful or addictive when it knew the opposite; and (3) has given false and fraudulent information to the public, Congress, and the scientific community. To counter public concerns over these health implications, Defendant allegedly formed the Tobacco Industry Research Committee (TIRC), later known as the Council for Tobacco Research (CTR). Defendant allegedly conspired with other cigarette manufacturers to either mislead or conceal from the public the addictive nature of nicotine, Defendant's control of nicotine levels in its cigarettes, and the true purpose of the CTR.

The Plaintiff also alleges that Defendant helped fund the Tobacco Institute. The alleged purpose of this institute consisted of lobbying the government and "creating doubt about the health charge (of smoking) without actually denying it." (Doc. 14, Amended Complaint, ¶ 44). In support of his allegations, the Plaintiff points to Tobacco Institute advertising characterizing the organization's goals. The Plaintiff also alleges that Defendant was responsible for misleading testimony before Congress that "there is no medical or scientific basis for viewing cigarette smoking as an 'addiction.'" (Doc. 14, Amended Complaint, ¶ 52). The Plaintiff also alleges that the Defendant manipulated nicotine levels in cigarettes. This manipulation allegedly assured continued addiction by smokers such as the Plaintiff's wife, thereby preserving Defendant's market. The Plaintiff alleges that these and other tortious acts by the Defendant deprived her of material facts regarding the dangers of smoking.

Specifically, the Plaintiff makes three claims. He asserts in Count One that the Defendant violated Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. § 16–14–1, *et seq.* The alleged RICO violations stem from the Defendant's action in concert with other tobacco companies and marketers to misrepresent their efforts in performing scientific research. Along with this research, the Defendant allegedly fashioned adver-

tising and marketing campaigns to conceal the dangerous health impact caused by cigarettes. The Plaintiff asserts in Count Two that the Defendant intentionally exposed her to a hazardous substance. In Count Three, the Plaintiff asserts fraud by the Defendant in misrepresenting the health hazards of cigarettes. The Plaintiff seeks compensatory and punitive damages. The Defendant has filed two summary judgment motions [Doc. 16, 46] with respect to all of the claims asserted against it.

Plaintiff was deposed after the Defendant filed its first motion for summary judgment. He testified that his wife really enjoyed smoking. (Huddleston Dep. pp. 94–95). She never tried to quit and never sought help from a doctor to quit smoking. (*Id.,* at 95–96). She read romance novels. (*Id.,* at 97). She did not keep up with the news. (*Id.,* at 98). She seldom read newspapers or magazines. (*Id.,* at 100–101). She never discussed with him any articles she read about smoking. (*Id.,* at 99–100). She mostly watched soap operas on television and did not watch the news on television. (*Id.,* at 103). She never talked to him about anything she saw on television about smoking. (*Id.,* at 105). He never discussed with her the warning labels on cigarettes. (*Id.,* at 109). He never saw her read any advertisements about cigarettes. (*Id.,* at 110). He never discussed cigarette advertisements with his wife. (*Id.,* at 11). He and his wife never discussed the Tobacco Institute or the Council for Tobacco Research (*Id.,* at 113–114). There is no other admissible evidence in the record of Mrs. Huddleston's reliance upon any of the Defendant's alleged misrepresentations.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

At the summary judgment stage, the court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of material fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir.1995). "Where the record taken as a whole could not lead a rationale trier of fact to find for the nonmoving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

In the First Motion for Summary Judgment, the Defendant contends that the Plaintiff's fraud and Georgia RICO claims in Counts One and Three fail because he cannot establish that Mrs. Huddleston relied on any of the Defendant's alleged misinterpretations or omissions. The Defendant contends that the Plaintiff's claim in Count Three fails because Georgia law does not recognize a cause of action for "intentional exposure to hazardous substance." The Defendant next contends

that the Plaintiff's (1) post–1969 failure to warn claims are preempted by federal law and should be dismissed and (2) pre–1969 failure to warn claims fail because the potential health risks associated with cigarettes were already common knowledge in the community. In the Second Motion for Summary Judgment, the Defendant contends that the Plaintiff has failed to designate an expert medical witness on the issue of causation. Thus, the Defendant contends that the Plaintiff's fraud and Georgia RICO claims fail because he cannot offer any competent proof to establish the essential element of causation.

For the reasons discussed below, the Court concludes that the Defendant is entitled to summary judgment with respect to all three claims. Plaintiff's Georgia RICO claims fail because he cannot show that the alleged predicate acts directly caused injury to his wife. The fraud claim fails because the Plaintiff cannot show reliance upon the alleged fraudulent misrepresentations. Furthermore, the majority of the Plaintiff's RICO and fraud claims, relating to post–1969 failure to warn claims, are preempted by federal law. Finally, the Court concludes that Georgia law does not recognize a cause of action for "intentional exposure to hazardous substance."

## A. *RICO*

A private cause of action is created in favor of persons injured by violations of O.C.G.A. § 16–14–4(a) which provides that: "It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property of any nature including money." Thus, the conduct prohibited by the Georgia RICO statute is the acquisition of money through a "pattern of racketeering activity." The Act further provides that "pattern" means engaging in at least two incidents of racketeering activity. O.C.G.A. § 16–14–3(2). Finally, "racketeering activity" is defined to mean the commission of a crime in any of 31 specified categories of offenses

known as predicate offenses. O.C.G.A. § 16–14–3(3). The Georgia Act is modeled after the federal RICO Act, and the Georgia courts have frequently relied upon federal case law in interpreting the Act.

■ In *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir.1991), the Eleventh Circuit held that a RICO plaintiff must show that his injuries were proximately caused by the unlawful predicate acts.

> This means that a private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts. A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act.

*Id.* at 1497. *See also O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir.1989). The Georgia Court of Appeals adopted the same proximate cause requirement in *Maddox v. Southern Engineering Company*, 231 Ga.App. 802, 805, 500 S.E.2d 591 (1998).

■ Plaintiff's Georgia RICO claim fails because he has failed to produce any evidence that there is a causal connection between his injury and a predicate act. He has not shown that Mrs. Huddleston relied upon any of the Defendant's misrepresentations or acts of concealment in deciding to start smoking. He has not shown that there is a causal connection between any of the alleged predicate acts and Mrs. Huddleston's decision to begin smoking cigarettes. He has not shown that Mrs. Huddleston relied upon any of Defendant's misrepresentation or acts of concealment in continuing to smoke until she became addicted to cigarettes. He has not shown that there is a causal connection between any of the alleged predicate acts and her continuing to smoke until she became addicted to cigarettes. He has not shown that Mrs. Huddleston relied upon any of the Defendant's misrepresentations

or acts of concealment in continuing to smoke until she developed lung cancer and died. Thus, Plaintiff has not shown that there is a causal connection between any of the alleged predicate acts and the death of his wife.

■ Plaintiff's assertion that reliance is not an element of a RICO claim based on mail or wire fraud is completely erroneous. Plaintiff argues that Reynolds "confuses mail and wire fraud with common law fraud." (Pl.Resp., p. 21). This argument has no merit. In *Pelletier*, the Eleventh Circuit clearly established that reliance must be proven in a case of mail or wire fraud. The applicable sections of the Georgia RICO statutes are "similar enough to the federal RICO statute to apply the same analysis." *Morast v. Lance*, 631 F.Supp. 474, 481 (N.D.Ga. 1986), *aff'd*, 807 F.2d 926 (11th Cir.1987). "When the alleged predicate act is *mail or wire fraud*, the plaintiff must have been a target of the scheme to defraud and *must have relied to his detriment* on misrepresentations made in furtherance of that scheme " *Pelletier*, 921 F.2d at 1499–1500 (emphasis added). Additionally, at least two Georgia courts have cited *Pelletier* and stated that the requirement of reliance for mail or wire fraud claims also applies under Georgia's RICO statute. *See Security Life Ins. Co. v. Clark*, 229 Ga.App. 593, 494 S.E.2d 388 (1997), *rev'd in part on other grounds*, 270 Ga. 165, 509 S.E.2d 602 (1998); *Longino v. Bank of Ellijay*, 228 Ga.App. 37, 491 S.E.2d 81 (1997). Thus, in cases where the RICO claim is based on mail or wire fraud, as here, Eleventh Circuit and Georgia courts have clearly established that the plaintiff must prove reliance. Because Plaintiff cannot establish that reliance, his RICO claim must fail.

### B. *FRAUD*

■ The *prima facie* elements of actual fraud are: "(1) a false representation by defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from action; (4) justifiable reliance by the plaintiff; and (5) damages." *Smith v. McClung*, 215 Ga.App. 786, 452 S.E.2d

229, 230 (1994) (citations and internal quotations omitted). The first element, misrepresentation of a material fact, can be demonstrated by either showing that a material fact was, in fact, misrepresented, or that a material fact was concealed by defendants. In this latter situation, however, the plaintiff must further allege that a fiduciary or confidential relationship existed such that the defendants had a duty to disclose the material fact in question. *Hubbard v. Stewart*, 651 F.Supp. 294, 298 (M.D.Ga.1987). Constructive fraud exists where defendant acted, or failed to act, " 'contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another.' " *Macon–Bibb County Hosp. Auth. v. Georgia Kaolin Co.*, 646 F.Supp. 90, 93 (M.D.Ga.1986), *aff'd*, 817 F.2d 98 (11th Cir.1987).

■ The Plaintiff's fraud claim must fail because he has failed to come forward with evidence to show reliance upon the alleged misrepresentations or acts of concealment. He has not shown that Mrs. Huddleston relied upon any of the Defendant's misrepresentations or acts of concealment in deciding to start smoking. He has not shown that Mrs. Huddleston relied upon any of Defendant's misrepresentation or acts of concealment in continuing to smoke until she became addicted to cigarettes. He has not shown that Mrs. Huddleston relied upon any of the Defendant's misrepresentations or acts of concealment in continuing to smoke until she developed lung cancer and died. Accordingly, the Defendant is entitled to summary judgment on Plaintiff's fraud claim.

■ Plaintiff asserts in a one sentence argument that with regard to Reynolds' alleged "nondisclosures, Plaintiff, as a matter of law, is presumed to have relied on the non-disclosures." (Pl.Resp., p. 26.) This conclusory statement is completely unsupported by any authority and, in fact, is an incorrect statement of Georgia law. Under Georgia law, in order to establish the required connection between the al-

leged wrongdoing and the plaintiff's injuries, a plaintiff alleging fraud is still required to prove reliance when the cause of action is based on omission or nondisclosure. *See e.g., Hanlon v. Thornton,* 218 Ga.App. 500, 462 S.E.2d 154 (1995) (requiring proof of reliance in cases of fraudulent concealment); *Eason Publications, Inc. v. NationsBank of Georgia,* 217 Ga.App. 726, 458 S.E.2d 899 (1995) (requiring proof of reliance in a fraudulent omission case); *Garbutt v. Southern Clays, Inc.,* 894 F.Supp. 456, 462 (M.D.Ga.1995) (finding that plaintiff's claims for fraud by misrepresentation or omission failed because they could not establish the element of reliance). In short, Plaintiff must prove reliance in support of *any* fraud cause of action. He cannot do that in this case and his claim must fail.

## C. *PREEMPTION*

In addition, Plaintiff's RICO and fraud claims are pre-empted to the extent any injury was caused by Defendant's post 1969 conduct. Relying on *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Defendant argues that the Federal Cigarette Labeling and Advertising Act (the "Labeling Act") preempts state tort claims that constitute a "requirement or prohibition based on smoking and health...imposed under State law with respect to...advertising or promotion." *Id.* at 524, 112 S.Ct. at 2621. Congress first passed the Labeling Act in 1965. The purpose of the Act was to "establish a comprehensive Federal Program" to deal with cigarette labeling and advertising with respect to any relationship between smoking and health. 15 U.S.C. § 1331. The Act requires that the following warning (or variation thereof) appear in a conspicuous place on every package of cigarettes sold in the United States: "WARNING: THE SURGEON GENERAL HAS DETERMINED THAT CIGARETTE SMOKING IS DANGEROUS TO YOUR HEALTH." 15 U.S.C. §§ 1331–1340. The purposes behind the Labeling Act's warning requirement were:

(1) to ensure that "the public may be adequately informed" of the adverse health effects of smoking; and (2) to protect the national economy from the burdens imposed by "diverse, nonuniform and confusing cigarette labeling and advertising regulations." 15 U.S.C. §§ 1331(1) and (2). Toward those ends, Congress enacted a preemption provision within the Labeling Act. The 1969 amendments to the Act broadened the language of the preemption provision so that it now reads as follows:

(a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) No requirement or prohibition based on smoking and health shall be imposed under state law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334. The Defendant contends that the Plaintiff's claims amount to a state requirement or prohibition on its advertising and promotion of cigarettes. Thus, to the extent Plaintiff's claims turn on a failure to warn or the content of cigarette advertising, the Defendant argues they are preempted by the Labeling Act. Before the Court can address whether Plaintiff's claims are preempted, a review of the preemption doctrine is warranted.

Preemption follows from the Supremacy Clause of the Constitution. The Supremacy Clause provides that: "the Laws of the United States...shall be the supreme Law of the Land." U.S. Const., Art. VI, cl. 2. Consequently, any state law that conflicts with a federal law is preempted by the federal law; the state law is "without effect." *Goodlin v. Medtronic, Inc.,* 167 F.3d 1367, 1370–71 (11th Cir.1999) (*citing Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617). State regulation established under the historic police powers of the states is not preempted unless preemption is the "clear and manifest pur-

pose" of Congress. *Lewis v. Brunswick Corp.,* 107 F.3d 1494, 1500 (11th Cir.1997). Thus, "[t]he intent of Congress is the touchstone of preemption analysis." *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608. Congress' intent must be measured against the historic police powers of the states. The health and safety of each state's citizens "are primarily, and historically, matters of local concern." *Medtronic v. Lohr,* 518 U.S. 470, 475, 116 S.Ct. 2240, 2245, 135 L.Ed.2d 700 (1996). Accordingly, "the States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort and quiet of all persons." *Id.* (internal quotation marks, citations, and alterations omitted).

 Congressional intent to preempt state law can take three forms:

(1) "express preemption," in which Congress defines explicitly the extent to which its enactments preempt state law; (2) "field preemption," in which state law is preempted because Congress has regulated a field so pervasively, or federal law touches on a field implicating such a dominant federal interest, that an intent for federal law to occupy the field exclusively may be inferred; and (3) "conflict preemption," in which state law is preempted by implication because state and federal law actually conflict, so that it is impossible to comply with both, or state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Lewis,* 107 F.3d at 1500.

 By including an express preemption clause in the Labeling Act, Congress has demonstrated its intent that the Labeling Act preempt at least some state law. *See Lewis,* 107 F.3d at 1500 (reviewing preemption by the Federal Boat Safety Act). Thus, the issue before the Court is not whether Congress intended for the Labeling Act to preempt state law, but the intended scope of that preemption. In considering this question, the Court must remember that "[i]n areas traditionally regulated by the states through their police powers, we apply a presumption in favor of a narrow interpretation of an express preemption clause," *Id.* (*citing Medtronic,* 518 U.S. at 485, 116 S.Ct. at 2250).

While the scope of preemption under the Labeling Act is unresolved, a preliminary issue is clear. The Eleventh Circuit has recognized that state tort suits constitute a "requirement or prohibition" under the Act. In *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.), *cert. denied,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993), the court considered preemption under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y. The court determined that the term "requirements" in FIFRA's preemption clause "sweeps broadly and suggests no distinction between positive enactments and the common law." *Id.* at 518 (*citing Cipollone,* 505 U.S. at 521–22, 112 S.Ct. at 2620). Accordingly, the court found that "[c]ommon law damages awards are one form of state regulation and, as such, are 'requirements' within the meaning of (FIFRA's preemption clause)." *Id.* Later, in *Lewis,* the Eleventh Circuit again found that a preemption clause in a federal regulation intended to preempt state tort claims in addition to state legislation. *Lewis,* 107 F.3d at 1500. "[T]he omission of the phrase 'common law' in the preemption clause is not determinative, because 'law' and 'regulation' may be read to include state tort actions." *Id.* The court cited as authority the plurality opinion from *Cipollone* which held that the phrase "State law" in the Labeling Act was intended to include common law claims. *Id.*

These general principles are of limited utility in ruling upon the Defendant's summary judgment motions. The Eleventh Circuit has not defined the parameters of the preemption defense in a smoking case either before or after *Cipollone. See Stephen v. American Brands,* 825 F.2d 312, 313 (11th Cir.1987). Therefore, the Court is bound to follow the plurality opinion of the Supreme Court in *Cipollone.* In that case, the plaintiff asserted four claims that

are relevant to this motion. The "failure to warn claims" alleged both that the product was "defective as a result of [Liggett's] failure to provide adequate warnings of the health consequences of cigarette smoking" and that the defendants "were negligent in the manner [that] they tested, researched, sold, promoted and advertised" their cigarettes. The "express warranty claims" alleged that the defendants had "expressly warranted that smoking the cigarettes which they manufactured and sold did not present any significant health consequences." The "fraudulent misrepresentation claims" alleged that the defendants had willfully, "through their advertising, attempted to neutralize the [federally mandated] warning[g]" labels, and that they had possessed, but had "ignored and failed to act upon" medical and scientific data indicating that "cigarettes were hazardous to the health of consumers." Finally, the "conspiracy to defraud claims" allege that the defendants conspired to deprive the public of such medical and scientific data.

Justice Stevens delivered the opinion of the Court, except as to Parts V and VI. In Parts I through IV, Justice Stevens discussed the factual and procedural background of the case. In Part V, Justice Stevens held that the 1965 Act did not preempt common law damage suits, but that the 1969 Act did preempt some common law actions. He stated the test for preemption as follows:

> Nor does the statute indicate that any familiar subdivision of common-law claims is or is not pre-empted. We therefore cannot follow petitioner's passing suggestion that § 5(b) pre-empts liability for omissions but not for acts, or that § 5(b) pre-empts liability for unintentional torts but not for intentional torts. Instead we must fairly but—in light of the strong presumption against pre-emption—narrowly construe the precise language of § 5(b) and we must look to each of petitioner's common-law claims to determine whether it is in fact pre-empted. The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of

the common-law damages action constitutes a "requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion," giving that clause a fair but narrow reading. As discussed below, each phrase within that clause limits the universe of common-law claims pre-empted by the statute.

*Cipollone,* 505 U.S. at 523–24, 112 S.Ct. at 2621. With respect to the failure to warn claim, the opinion concluded that "insofar as claims under either failure-to-warn theory require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted." The opinion concluded that the plaintiff's breach of express warranty was not preempted. Plaintiff asserted two different fraud claims. The first was that the defendants, through their advertising, neutralized the effect of federally mandated warning labels.

> Such a claim is predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking. Such a prohibition, however, is merely the converse of a state-law requirement that warnings be included in advertising and promotional materials. Section 5(b) of the 1969 Act pre-empts both requirements and prohibitions; it therefore supersedes petitioner's first fraudulent misrepresentation theory.

*Id.* at 527, 112 S.Ct. at 2623. The Plaintiff's second fraud claim alleged intentional fraud and misrepresentation both by "false representation of a material fact [and by] conceal[ment of] a material fact." *Id.* at 528, 112 S.Ct. at 2623. As to concealment, the opinion stated:

> Section 5(b) pre-empts only the imposition of state-law obligations "with respect to the advertising or promotion" of cigarettes. Petitioner's claims that respondents concealed material facts are

therefore not pre-empted insofar as those claims rely on a state-law duty to disclose such facts through channels of communication other than advertising or promotion. Thus, for example, if state law obliged respondents to disclose material facts about smoking and health to an administrative agency, § 5(b) would not pre-empt a state-law claim based on a failure to fulfill that obligation.

*Id.* at 528, 112 S.Ct. at 2623. The opinion then concluded that the "fraudulent-misrepresentation claims that do arise with respect to advertising and promotions (most notably claims based on allegedly false statements of material fact made in advertisements) are not pre-empted by § 5(b)." *Id.* at 528, 112 S.Ct. at 2623–24. Such claims are predicated not on a duty "based on smoking and health" but rather on a more general obligation the duty not to deceive. *Id.* at 528–29, 112 S.Ct. at 2624. Finally, Justice Stevens held that the plaintiff's claim of conspiracy to misrepresent or conceal material facts was not preempted. *Id.* at 530, 112 S.Ct. at 2624–25. In Part VI, Justice Stevens summarized the application of the preemption doctrine to each of the plaintiff's claims.

Justice Blackmun delivered an opinion concurring in parts I through IV of the Court's opinion, but dissenting as to Parts V and VI. Justice Blackmun concluded that neither the 1965 nor the 1969 Act preempted common law damage claims. In his opinion, "the plurality proceeds to create a crazy quilt of pre-emption from among the common-law claims implicated in this case, and in so doing reaches a result that Congress surely could not have intended." *Id.* at 542–43, 112 S.Ct. at 2631. Anticipating problems, he aptly concluded that "I can only speculate as to the difficulty lower courts will encounter in attempting to implement today's decision." *Id.* at 543–44, 112 S.Ct. at 2631. Justices Souter and Kennedy joined in Justice Blackmun's opinion. Justice Scalia, joined by Justice Thomas, concluded that all of the plaintiff's claims were preempted. *Id.* at 544, 112 S.Ct. at 2632. Justice Scalia shared Justice Blackmun's concern about the difficulty that lower courts would encounter in attempting to implement the Court's decision. *Id.* at 555, 112 S.Ct. at 2637–38.

■ It would be an understatement to say that it is difficult to apply the plurality opinion in *Cipollone* to the Amended Complaint in this case. It is an impossibility. The Plaintiff has jumbled together allegations of failure to warn, concealment of material facts, false advertising and promotion and conspiracy. He then makes two general claims of fraud and violation of the Georgia RICO statute. The Plaintiff does not appear to have made any effort to limit his claims to those allowed by *Cipollone*. His Amended Complaint is the sort of "shotgun pleading" that has been condemned by the Eleventh Circuit. *See GJR Investments, Inc. v. County of Escambia, FL*, 132 F.3d 1359, 1368 (11th Cir.1998). In *Cipollone*, the Court held that fraudulent misrepresentation claims that are "inextricably related" to preempted claims are also preempted. *Cipollone*, 505 U.S. at 528, 112 S.Ct. at 2623. The Court finds that most of Plaintiff's claims do not satisfy the test in *Cipollone*. That test is "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health...imposed under State law with respect to...advertising or promotion.'" *Cipollone*, 505 U.S. at 524, 112 S.Ct. at 2621.

The Plaintiff makes no allegation of his wife's reliance on any channel of communication other than those used for the advertising or promotion of cigarettes. The Plaintiff's claims in Counts One and Three have as their predicate duty a requirement or prohibition based on smoking and health respecting advertising or promotion. In Count One, Plaintiff alleges a violation of Georgia's RICO statute. The alleged conspiracy involved "misrepresent[ing] their goal and purpose as seeking to obtain and publish objective and truthful information relating the addictive nature and health impact of cigarette smok-

ing." (Doc. 14, Amended Complaint, ¶ 95). The Plaintiff alleges that this was done by "fashion[ing] the *advertising and promotion of cigarettes* in a way to create the view that there was a genuine, good faith, scientific medical controversy over the adverse impact of smoking cigarettes." (*Id.* at ¶ 96) (emphasis added). Likewise, the Plaintiff's claim of fraud in Count Three relies on the Defendant's advertising and promotion of cigarettes. Plaintiff alleges "material misrepresentations to the public, including Mrs. Huddleston." (*Id.* at ¶ 123). This claim also incorporates the allegation that "Defendant ... has spent millions of dollars each year in advertising and promoting cigarettes." (*Id.* ¶ 25). Many more allegations lace the Complaint concerning alleged false representations made by the Defendant either through advertising or congressional testimony.[1] Thus, the legal duty that is the predicate of both the RICO and fraud claims "constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion.'" *Cipollone,* 505 U.S. at 524, 112 S.Ct. at 2621. Consequently, both claims are expressly preempted by the Labeling Act.

■■■ Sprinkled through these allegations that are clearly preempted by the holding in *Cipollone* are other allegations that may not be preempted according to the plurality opinion in *Cipollone.* For example, it appears that Plaintiff is claiming that Defendant's advertising was intentionally false. (*See* Doc. 14, Amended Complaint at ¶¶ 25–27). Such a claim is not preempted according to the plurality opinion in *Cipollone.* However, the claim is not stated with the particularity required by Rule 9 of the Federal Rules of Civil Procedure and is inextricably intertwined with other claims that are clearly

preempted. The Plaintiff has not come forward with any evidence that his wife relied upon the alleged intentional fraudulent misrepresentations. The claims related to advertising and promotion are clearly preempted. Accordingly, the Court finds that the Defendant is entitled to summary judgment with respect to its preemption defense.

### D. *INTENTIONAL EXPOSURE TO A HAZARDOUS SUBSTANCE*

■■■ The Plaintiff alleges in Count Two of his Amended Complaint that the Defendant intentionally exposed his wife to a hazardous substance. The Plaintiff offers no authority that such a claim is recognized in Georgia. As the forum state, Georgia substantive law controls the Court's decision in this diversity action. *Johnson v. Fleet Fin., Inc.,* 4 F.3d 946 (11th Cir.1993). When no controlling state law exists, a federal court must decide the issue as it believes a state court would decide it. *Palmquist v. Piper Aircraft Corp.,* 757 F.Supp. 1411 (N.D.Ga.1991). This Court finds no authority in Georgia law which supports recognizing a tort of intentional exposure to a hazardous substance where the product is a legal product, is not defective, is packaged in conformity with federal law and is put to the intended use by the consumer. Many products are hazardous even when put to their intended use. Georgia products liability law allowing recovery for injuries caused by defective products is well defined. The Plaintiff fails to allege or present evidence of the elements of such a claim in Count Two. Thus, the Court finds that the Defendant is entitled to summary judgment as to Count Two.

---

1. The Court views the congressional testimony by a tobacco company or institutes backed by tobacco companies as promotion of cigarettes. "Any attempt by Defendants to notify its customers of the dangers of smoking would employ the same techniques as a traditional advertising or promotional campaign,

save with the goal of discouraging smoking. Lobbying, seminars, and public service announcements are all undertaken with the effect of promoting and fostering a product or an ideology." *Sonnenreich v. Philip Morris, Inc.,* 929 F.Supp. 416, 419 (N.D.Fla.1996)

## IV. CONCLUSION

The Defendant's unopposed Motions to File Supplementary Brief in Support of First Motion for Summary Judgment [Doc. 32] and to Submit Supplemental Authority in Support of First Motion for Summary Judgment [Doc. 47] are GRANTED. The Defendant's Motion to Strike Certain Portions of the Plaintiff's Affidavit filed in Response to First Motion for Summary Judgment [Doc. 33] is GRANTED as unopposed and on the merits. The Defendant's First Motion for Summary Judgment [Doc. 16] is GRANTED with respect to all of the claims asserted against the Defendant. The Second Motion for Summary Judgment [Doc. 46] is DENIED as moot. Because this Order resolves this case, the Clerk is directed to enter final judgment in favor of the Defendant and to close this case.