## A01A1896. COLE et al. v. FAUK et al.
### (560 SE2d 772)

RUFFIN, Judge.

Elizabeth and Doy Cole, parents of Betsy Cole, sued Nathan Fauk and his parents, Mark and Emily Fauk (the Fauks), after a car that Nathan was driving struck a tree, injuring his passenger, Betsy. The Coles sought damages from the Fauks and payment of uninsured motorist benefits from both State Farm Insurance, the insurer for the Cole family, and from USAA, the insurer for the Fauk family. The Fauks, USAA, and State Farm filed separate motions for summary judgment, which the trial court granted. The Coles appeal, and for reasons that follow, we affirm.

In order to prevail on a motion for summary judgment, the movant must demonstrate "that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[1] A defendant may obtain summary judgment by demonstrating that the record contains no evidence sufficient to create a jury issue on at

---

[1] *Traicoff v. Withers*, 247 Ga. App. 428 (544 SE2d 177) (2000).

least one essential element of the plaintiffs' case.[2] A defendant is not required to affirmatively disprove the plaintiffs' case, but may prevail by pointing to the absence of evidence to support the plaintiffs' case.[3] If the defendant does so, the plaintiffs cannot rest on their pleadings, but must point to specific evidence giving rise to a triable issue of fact.[4]

Viewed in this light, the record shows that Nathan turned fifteen on November 30, 1997, and obtained an instruction permit driving license three days later. Under Georgia law, the instruction permit allowed Nathan to drive as long as he had a licensed driver age 21 years or older in the car.[5] In addition to this restriction, Nathan's parents established the rule that Nathan could drive only if he had a parent, his older sister, or another "responsible adult" that the parents knew in the car.

In early May 1998, Nathan began dating Betsy Cole, who was a senior at his school. Betsy, who was 18 and had a valid driver's license, drove a Ford Mustang. After school on May 13, 1998, Betsy and Nathan decided to go to a video store to rent a movie. Although Betsy was not supposed to let anyone else drive the Mustang, she asked Nathan if he wanted to drive to the store, and he said, "sure." While driving to the store, Nathan lost control of the Mustang, and the car struck a tree. The Mustang was totally destroyed, and both Betsy and Nathan were seriously injured. Although Nathan eventually recovered, Betsy sustained a brain injury that resulted in memory loss and paralysis.

Because of Betsy's injuries, her mother was appointed as her guardian. In this capacity, Elizabeth Cole, along with her husband, sued Nathan and his parents. According to the complaint, the Fauks are liable for negligently failing to control their minor child and for negligently furnishing him with a driver's license "when they knew or should have known that he was incapable of controlling his behavior . . . [and] that he was incapable of driving, controlling, and operating a vehicle safely."

In addition to serving the Fauks, the Coles served State Farm Insurance, seeking payment of uninsured motorist benefits under the Coles' policy. The Coles also served USAA, the company that insured the Fauk family, seeking uninsured motorist benefits. The Fauks and both insurance companies moved for summary judgment. The Fauks argued that they could not be held liable for the negligence of their son and, thus, were entitled to summary judgment.

---

[2] See id.
[3] See id.
[4] See id.
[5] See OCGA § 40-5-24 (a) (1).

Both insurers asserted that the Coles were not entitled to uninsured motorist benefits. The trial court agreed with the defendants and granted all three motions for summary judgment.

1. In two enumerations of error, the Coles contend that the trial court erred in concluding, as a matter of law, that the Fauks could not be held liable under OCGA § 51-2-3. Under this Code section, parents may be held liable "for the willful or malicious acts of [their] minor child."[6] According to the Coles, the issue of whether Nathan's actions were malicious should have been left to a jury. We disagree.

As a general rule,

> parents are not liable in damages for the torts of their minor children merely because of the parent-child relationship; when liability exists it is based on a principal-agent or a master-servant relationship where the negligence of the child is imputed to the parent, or it is based on the negligence of the parent in some factual situation such as allowing the child to have unsupervised control of a dangerous instrumentality.[7]

In order to impose parental liability under OCGA § 51-2-3, the Coles must point to evidence that Nathan's parents "knew of [their] child's proclivity or propensity for the specific dangerous activity."[8] The mere fact that parents know their child is prone to disobedience is not sufficient to impose liability.[9] Here, the Fauks testified unequivocally that Nathan was not allowed to drive with anyone other than a family member and that they had no reason to believe their son would disregard their rules. Although Mrs. Cole had a suspicion that Nathan had driven the Mustang on another occasion based upon the seat position in the car, she was not able to testify with any certainty that Nathan had, in fact, done so, nor was she able to point to any evidence that Nathan's parents knew of any such incident. Under these circumstances, the trial court correctly granted summary judgment to the Fauks.

The case cited by the Coles, *Alterman v. Jinks*,[10] does not demand a different result. In that case, Alterman sent his maid in his car to pick up his 15-year-old son and instructed the maid to let the boy drive back home. On the return trip, the boy drove the car

---

[6] OCGA § 51-2-3 (a).

[7] (Punctuation omitted.) *McNamee v. A. J. W.*, 238 Ga. App. 534, 535 (1) (519 SE2d 298) (1999).

[8] *Jackson v. Moore*, 190 Ga. App. 329, 330 (378 SE2d 726) (1989) (standard for imposing liability where parent did not provide dangerous instrumentality).

[9] See id.

[10] 122 Ga. App. 859 (179 SE2d 92) (1970).

into oncoming traffic, injuring the maid. The issue presented was whether the father acted negligently in permitting his son to drive the car.[11] Here, the Fauks did not direct Betsy to let their son drive. To the contrary, the Fauks did not know that their son had driven his girlfriend's car until after the accident. It follows that *Alterman* does not control.

2. In a separate enumeration of error, the Coles ask this Court to hold the Fauks liable as a matter of public policy. The Coles ask that we "shift the imputation of [liability] for a child's negligence . . . from merely furnishing the minor a dangerous instrumentality [and] . . . extend that imputation of liability to . . . situations where the parent could foresee . . . the child's conduct." According to the Coles, this would alleviate "the current status of mayhem in Georgia . . . from affluent teenagers killing themselves and others for lack of supervision." We note, however, that it is the role of the legislature, not the judiciary, to determine public policy.[12] If the legislature decides to expand parental liability, it may do so. Until then, this Court will continue to enforce the law as written.[13]

3. Evidently, the Coles sought to recover uninsured motorist benefits from both State Farm and USAA. The trial court concluded that the Coles were not entitled to recover from State Farm, finding that the Mustang "was excluded by the terms of the [insurance] policy from being an uninsured motor vehicle." With respect to USAA, the trial court determined that the Coles could not recover uninsured motorist benefits because the liability coverage exceeded the uninsured motorist benefits provided by USAA. The Coles challenge these rulings.

In their brief, the Coles quote the insurance policies and list the coverage available under the various plans. The Coles do not, however, cite to the record to support these quotes, and it does not appear from our cursory review of the record that copies of the policies were included.[14] " ' "When a portion of the record is not before this court which is necessary for our determination of one or more of the appellate issues raised, an affirmance as to those issues must result." ' "[15] Here, the policies are necessary to address the alleged error on appeal. In view of their absence, we affirm.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

---

[11] Id. at 863.

[12] See *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963).

[13] See id.

[14] Assuming, for the sake of argument, that copies of the policy are buried in the record, we remind appellants that " 'it is not the function of an appellate court to cull the record.' " *Galloway v. Linnell*, 242 Ga. App. 221, 222 (2) (529 SE2d 226) (2000).

[15] *Hanover Credit Corp. v. Datamatx*, 226 Ga. App. 12, 13 (485 SE2d 571) (1997).

DECIDED FEBRUARY 22, 2002.

*Donald W. Johnson*, for appellants.

*Savell & Williams, John C. Parker, Robert E. Mulholland, Lisa J. Bucko, Beck, Owen & Murray, William M. Dallas III, Barrickman, Allred & Young, Fredric S. Young, Joan G. Crumpler*, for appellees.