A02A1623. CAPITAL CONSTRUCTION COMPANY
v. PROFESSIONAL SERVICE INDUSTRIES, INC.
(574 SE2d 333)

PHIPPS, Judge.

In June 1999, Professional Service Industries, Inc. (PSI) sued Capital Construction Company (Capital) for $5,700 plus interest on an open account. Capital's answer denied the indebtedness, and Capital later filed a counterclaim alleging breach of contract, fraud, and violation of the Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act.[1] Capital appeals the grant of summary judgment to PSI on the fraud and RICO counts of its counterclaim. Capital argues that the trial court should have found genuine issues of material fact whether (a) PSI intended to defraud Capital, (b) Capital relied on PSI's representations to it, and (c) Capital was damaged by PSI's fraudulent misrepresentations. Capital also claims that the trial court should not have granted partial summary judgment without permitting Capital additional discovery to establish its claims. Because we discern no error, we affirm.

> In order to prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may obtain summary judgment by demonstrating that the record contains no evidence sufficient to create a jury issue on at least one essential element of the plaintiff['s] case. A defendant is not required to affirmatively disprove the plaintiff['s] case, but may prevail by pointing to the absence of evidence to support the plaintiff['s] case. If the defendant does so, the plaintiff[ ] cannot rest on [its] pleadings, but must point to specific evidence giving rise to a triable issue of fact.[2]

---

[1] OCGA § 16-14-1 et seq.
[2] (Punctuation and footnotes omitted.) *Cole v. Fauk*, 253 Ga. App. 892-893 (560 SE2d 772) (2002).

Viewed in this light, the record shows that, in December 1997, the parties entered an agreement whereby PSI, an engineering testing company, would perform for Capital "[s]ervices as requested . . . in accordance with the attached schedule of fees."

Capital paid PSI's first four itemized invoices (those through March 1998) in full. The affidavit of one of Capital's vice presidents, who reviews invoices for payment, states that "Capital did not notice, at the time it paid the [first four] invoices, that PSI was billing Capital for . . . services . . . Capital had not requested." In June 1998, Capital wrote PSI that it had adjusted the April and May invoices and paid an amount less than the amount shown on the original invoices. By return mail, PSI sent Capital a revised billing giving it credit in an amount much smaller than the amount it had withheld. Capital responded that it "agree[d] that a reasonable charge for travel for your engineering technician to come to the project site should be recognized" and would "re-review your invoices in this regard" and "remit any additional payment due." It is unclear, however, what, if anything, Capital did thereafter in connection with the travel charges.

Meanwhile, PSI continued to perform tests for Capital and send it invoices. In October, PSI wrote Capital that it was discontinuing all services and would be pursuing collection of the account unless it received payment within ten days. Capital responded that it had paid for all services it had requested. The following month representatives of the parties met. According to the affidavit of David Weisert, a PSI project manager, Capital agreed to make further payments, but did not make them. According to the affidavit of a Capital vice president, Douglas Bodenhamer, PSI agreed to make further credits but did not do so. Approximately seven months later, PSI sued on the account.

1. Capital claims that the trial court should have found genuine issues of material fact whether PSI intended to defraud Capital. We disagree.

To prove its fraud claim, Capital must establish that: (1) PSI made a false representation; (2) PSI knew the representation was false at the time it was made; (3) PSI made the representation with the intent and purpose of deceiving Capital; (4) Capital reasonably relied on such representation; and (5) Capital sustained damages as a proximate result of the representation having been made.[3] "Summary judgment is appropriate if one essential element of [Capital's] claim is eliminated."[4]

Capital relies primarily on Weisert's deposition to support its

---

[3] See *Longino v. Bank of Ellijay*, 228 Ga. App. 37, 39 (1) (491 SE2d 81) (1997).
[4] Id.

fraud claim. During the deposition, Weisert agreed that "some charges for a project manager and for an engineer are simply arbitrary charges, based upon the fact that a certain document went out. Either .5 hours or .3 hours. . . ." He also agreed that a project manager might have spent as little as five minutes reviewing a daily field report for which PSI had billed a half-hour as "an arbitrary allocation of time." He agreed, finally, that in "virtually all" of PSI's invoices there were charges for review and analysis that were also arbitrary allocations of time. Capital argues that this testimony was sufficient to prove PSI's intent to deceive. However, in a later affidavit, Weisert explained that when he agreed that certain PSI charges were "arbitrary," he meant that the charges "did not necessarily reflect the exact amount of time spent by any one person at PSI for the service in question."

PSI's district manager explained that the charges referred to by Weisert were "standard charges" and stated that

> PSI charged a standard charge of one-half hour of project management time in connection with the preparation and review of a test report and .3 hours of [such] time in connection with the preparation and review of a concrete comprehensive strength test report. These standard charges were a conservative estimate of the . . . time . . . the project manager spent per report managing the project, coordinating activities, including briefing the field technicians prior to their work . . . , reviewing the rough drafts of reports, running quality control on the calculations performed by the field technicians, comparing the results to project specifications, reviewing the results in the overall scope of the project, proofing the final typed report, notifying the client of any failing tests, and as a result of this management, being able to respond to any client inquiry regarding the test results.

The district manager acknowledged that although Capital "should have been informed" at the outset of the project of the use of "standard charges," PSI's billings itemized those charges "so they could be reviewed and approved by the customer."

Despite its repeated and vigorous assertions to the contrary, Capital has not provided "specific evidence giving rise to a triable issue of fact"[5] as to intent to defraud. PSI provided Capital with itemized invoices detailing the date the work was performed, a description of the work performed, the amount of time spent (where appli-

---

[5] *Cole*, supra, 253 Ga. App. at 893.

cable) to the nearest tenth of an hour, the distance traveled (where applicable), the hourly or mileage rate or other unit cost, and the resulting charge. The amount of time allocated to and the cost of the "standard charges" were clearly shown on the invoices along with the other charges. Their use did not constitute evidence of an intent to defraud. Moreover, Capital had the right to question or object to any charges on the invoice before making payment. It exercised that right with respect to several invoices and could have done so with any others it found objectionable.

Capital also argues that PSI's failure to disclose its use of "standard charges" was sufficient to defeat PSI's motion for summary judgment. Although we agree that the better practice would be to disclose the use of standard charges at the outset,[6] the failure to do so did not constitute the "concealment of a material fact . . . in such a manner as to deceive and mislead."[7]

Based on our conclusion that Capital has not pointed to specific evidence showing an intent to defraud, we affirm the grant of summary judgment on the fraud count of Capital's counterclaim.

2. Pretermitting whether Capital's enumeration of errors raises a claim of error as to the grant of summary judgment on the RICO count in its counterclaim, we note that the RICO count alleges mail fraud as the predicate act.

Pursuant to OCGA § 16-14-4, it is unlawful for any person, through a pattern of racketeering activity, to acquire or maintain any interest in or control of any "enterprise, real property, or personal property of any nature, including money." A "pattern of racketeering activity" means engaging in at least two incidents of racketeering activity.[8] And the definition of "racketeering activity" includes conduct defined as "racketeering activity" under 18 USC § 1961 (1) (A), (B), (C), and (D),[9] which includes mail fraud as defined by 18 USC § 1341.[10]

Mail fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mail in furtherance of that scheme.[11] A scheme to defraud requires that the defendant have had "a conscious knowing intent to

---

[6] See *Park Place Café v. Metro. Life Ins. Co.*, 254 Ga. App. 733, 736 (1) (563 SE2d 463) (2002) (monthly billings indicated that a "fuel adjustment" was added to the electricity charges).

[7] (Punctuation omitted.) *Longino*, supra.

[8] OCGA § 16-14-3 (8) (A).

[9] OCGA § 16-14-3 (9) (A) (xxix).

[10] 18 USC § 1961 (1) (B); see also *Reaugh v. Inner Harbour Hosp.*, 214 Ga. App. 259, 264 (5) (a) (447 SE2d 617) (1994) (mail fraud is predicate act under Georgia RICO statute).

[11] *Pelletier v. Zweifel*, 921 F2d 1465, 1498 (11th Cir. 1991).

defraud."[12] Because we have already found a lack of specific evidence giving rise to a triable issue of fact with respect to any intent of PSI to defraud Capital, it follows that we must affirm the grant of summary judgment on the RICO count of Capital's counterclaim.

3. Finally, Capital claims that the trial court should not have granted partial summary judgment without permitting Capital additional discovery to prove its claims. Putting aside the matter of whether Capital complied with the procedural requirements of OCGA § 9-11-56 (f),[13] the question is whether additional discovery could "add substance" to Capital's counterclaim.[14] Capital asserts that it was deprived of the "opportunity of discovering just how far-ranging PSI's fraudulent scheme actually was" and that the discovery is "relevant to showing a pattern of racketeering activity as well as the egregious nature of PSI's misconduct." As we have found a lack of specific evidence giving rise to a triable issue of fact with respect to any intent of PSI to defraud Capital, however, we cannot see how additional discovery could add substance to these aspects of Capital's counterclaim.

Capital also states that "[e]ven if the trial court believed the so-called 'standard charges' to be legitimate . . . , Capital was nevertheless entitled to discovery responses from PSI on the various components that [comprise] its so-called 'conservative estimate' of the 'standard charges.' " We express no opinion on whether this discovery could add substance to the breach of contract count of Capital's counterclaim that remains pending below. It is clear, however, that, because it would not go to the question of any intent of PSI to defraud Capital, it could not add substance to the counts at issue here.

Accordingly, the court did not err in granting partial summary judgment to PSI without permitting Capital additional discovery.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 17, 2002

*Griffin, Cochrane & Marshall, John D. Marshall, Jr., Keith A. Pittman*, for appellant.

---

[12] (Citations and punctuation omitted.) Id. at 1499.

[13] Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.

[14] *McCall v. Henry Med. Center*, 250 Ga. App. 679, 685 (2) (551 SE2d 739) (2001); accord *Bellamy v. Resolution Trust Corp.*, 266 Ga. 630, 632 (2) (469 SE2d 182) (1996) ("[A]lthough we do not generally condone the grant of summary judgment while a motion to compel discovery is pending, reversal is not required because the requested discovery could not have added anything of substance to the [appellants'] claims. [Cit.]").

*Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge,* for appellee.