## 50869. LURLEE, INC. v. PERNOSHAL-39 COMPANY.

MARSHALL, Judge.

This is an appeal by a contractor (Lurlee) from a judgment for damages rendered against it in favor of the owner-builder Pernoshal (an acronym from Perimeter, North and Shallowford), based upon a breach of contract to build fifty apartments.

On or about March 9, 1971, Pernoshal and Lurlee entered into a contract under which Lurlee was to build fifty apartments in a development for a cost not to exceed $630,360, which sum included a 5% contractor fee. These fifty units were to be completed within two hundred calendar days or by September 25, 1971.

It is uncontested that Lurlee commenced construction of the Pernoshal apartments shortly after the execution of this contract. Some fifteen months later on May 30, 1972, Lurlee abandoned the construction site and unilaterally abrogated the contract, complaining that Pernoshal had breached the same by refusing to make further payments to Lurlee for work completed. Nothwithstanding the contract price of $630,360.00 and the execution time of two hundred days, Pernoshal continued to make payments for completed work past September 25, 1971, and ultimately paid to Lurlee approximately $647,692. At the time the construction site was abandoned, Lurlee had substantially completed work on thirteen of the fifty units called for by the contract.

Initially Lurlee brought this action to foreclose a lien on Pernoshal's property. However in September, 1972, after the property had lain dormant for some three months with no work being done, the property (consisting of some 4.1 acres and the completed and partially completed apartments) was sold at foreclosure by the construction lender due to default in repayment of the construction loan. Each party alleges the breach of contract by the other. Lurlee claimed damages in the amount of $111,731.92 as balance due for work performed under the contract, and, in an alternative count, the same amount on the theory of quantum meruit. Pernoshal denied the breach of contract and asserted a counterclaim for breach of contract against Lurlee in the amount of $372,000.

Following a convoluted trial lasting some five days and extending to over 800 pages of record and transcript, a jury found for appellee, Pernoshal in the amount of $111,364. During the trial, appellant unsuccessfully moved for a directed verdict, and following the verdict, unsuccessfully moved the trial court for judgment notwithstanding that verdict. After the verdict of the jury was entered as the judgment of the court, appellant Lurlee moved for a new trial, without success, on the general grounds and the alleged harmful erroneous admission of certain evidence. Lurlee now brings this appeal complaining of the refusal to grant its motion for directed verdict, its motion for judgment notwithstanding the verdict and its motion for a new trial. *Held:*

1. Lurlee seeks a reversal based upon the trial court's alleged improper rulings in allowing certain opinion testimony to go to the jury, to its alleged prejudice, and in keeping certain probative evidence from the jury. However, the main thrust of its appeal is based upon the alleged error in allowing Pernoshal's counterclaim to go to the jury on a claim for damages that was remote, speculative, not within the contemplation of the parties, and not supported by the evidence. (Code Ann. §§ 20-1406 and 20-1407). Appellant apparently concedes that the jury's verdict was based upon a finding that it, Lurlee, breached the contract. However, Lurlee's contention is that, since the damages are remote, speculative and

incapable of specific definition, the breach of contract found would support only nominal damages, but would not support the substantial compensatory damages awarded by the jury. The action being ex contractu, upon proof of a breach thereof, the injured party is entitled to at least nominal damages. But in order to recover substantial, compensatory damages, there must be some evidence of actual damages, and the amount thereof. *Milledgeville Water Co. v. Fowler,* 129 Ga. 111, 114 (58 SE 643).

In this case Pernoshal alleged damages, among others, based upon defective construction work, cost of completion and lost rents. It offered proof as to the defective construction and cost of completion in the form of sworn testimony of a qualified architectural expert hired by Pernoshal to evaluate and estimate the cost of completing the apartment complex shortly after Lurlee abandoned further work on the project on May 30, 1972. This witness testified that the total additional cost of completing the fifty apartment units as had been contemplated by the contracting parties would cost Pernoshal approximately an additional $120,372. This sum included the correction of defective workmanship.

Lurlee contends in this appeal that since Pernoshal did not expend this $120,372 it has suffered no compensable harm. However, neither of the contracting parties disputes that the original contract provided for the construction of fifty apartments for a sum not to exceed $630,360. Moreover, both Pernoshal and Lurlee agree that as of May 30, 1972, Pernoshal had paid Lurlee in excess of $647,500 for the construction of the same fifty apartments. Apparently, Pernoshal was still willing to continue the contract with Lurlee up until late May, 1972, in order to obtain the completed apartments. Pernoshal was pressing Lurlee to complete the project sufficiently and not later than June 28, 1972, so that the agent of the construction loan lender could make a site inspection indicating a degree of completeness that would not endanger the permanent financing commitment. In order to obtain what it had contracted for with Lurlee and for which it had already expended in excess of $647,500, Pernoshal was still obligated to expend approximately

$120,000. Thus the jury logically and rightfully could conclude under such evidence that Pernoshal had been damaged to the extent of $120,000.

As to the loss of rents, the evidence indicated that by March, 1972, some five apartments were available for rental and a total of thirteen were "habitable." However, because of the "unfinished" condition of these thirteen apartments, only four were actually occupied, one by the resident manager, an employee of Pernoshal. That person's testimony reflected that two-bedroom apartments were offered for rental at $250 per month. Pernoshal could legitimately claim the loss of rental of nine of the apartments at a monthly rate of $250 for the period from May 30, 1972, the time of abandonment by Lurlee, to September, 1972, when the foreclosure action took place. Thus the jury could properly assess some amount in excess of $6,500 as compensable damages for loss of rental.

2. Other evidence which supports the findings of the jury, was evidence of actual cash loss apparently suffered by Pernoshal. Though the original tract of land owned by Pernoshal involved some 39 acres, only 4.1 acres were utilized in the apartment complex. There was evidence that the property when originally purchased was valued at $14,000 an acre. There was other evidence that at the time of the foreclosure, the same, unimproved land was valued at a minimum of $30,000 an acre. Additionally, testimony offered by the loan officer of the construction loan mortgagee indicated the foreclosure sale was designed to and did recompense the mortgage company only for its actual cash outlay and expenses, approximately· $605,000. Thus, as of September, 1972, Pernoshal was back in its original position insofar as the land was concerned, less some 4.1 acres which were taken in the foreclosure. It had borrowed money and that indebtedness was satisfied by the foreclosure. However, Pernoshal had expended over $647,500 on the apartments. The jury was clearly authorized to conclude that Pernoshal had expended over $42,000 of its own assets above the ban sum for apartments upon which it had no claim after the foreclosure. Lurlee admits that Pernoshal had lost at least $57,400 if the 4.1 acres were to

be valued at $14,000 an acre. The jury could have found, however, under the evidence that the 4.1 acres were valued at not less than $135,000, or at least $30,000 an acre.

It is obvious that under any one of several evidentiary presentations, individually or combined, the jury could have found substantial, specific compensatory damages in favor of Pernoshal, once it determined that Lurlee breached the contract. Appellant has presented to this court issues of fact (which party in fact breached the contract; what was the quality of work performed by Lurlee; excessive verdict, etc.) which were presented to and decided by the jury on the basis of contradictory evidence. The verdict in the amount rendered was authorized, but not demanded. The verdict constituted a jury resolution of conflicting theories and is thus beyond the reach of this court. *Ayers Enterprises, Ltd. v. Adams,* 131 Ga. App. 12, 18 (205 SE2d 16).

3. Though there are some eight enumerations of error, the first three deal with the trial court's refusal to direct a verdict for appellant on Pernoshal's counterclaim; in denying its motion for judgment n.o.v.; and in denying its motion for a new trial. These enumerations are not supported by argument or authorities and therefore are deemed to be abandoned. Rules of the Court of Appeals of the State of Georgia, Rule 18 (c) (2).

4. Appellant does speak in terms of a new trial, but this concerns the alleged errors in the trial court's refusal to allow testimony of a loan by Pernoshal to an interested purchaser of the apartments prior to Lurlee's abandonment of the project. Lurlee contends this evidence would have shown diversion of the funds advanced by the construction loan lender for construction of the apartment and is evidence of Pernoshal's breach of the contract by its refusal or inability to pay Lurlee its reasonable and proper cost of work performed under the contract. (Enumerations 6, 7, and 8.)

The simple answer to appellant's complaint is that in a dispute between these two parties concerning a contract, evidence as to what occurred between one of them and a third party with reference to a similar, though entirely distinct transaction, is irrelevant and properly excluded. *G. E. C. Corp. v. Levy,* 126 Ga. App. 604, 609 (191 SE2d

461). Pernoshal's contractual liability was to pay Lurlee for its expenses and a contractor's fee evolving from the apartment construction. When Pernoshal obtained the money or from whom or what Pernoshal did with its money was of no concern to Lurlee or the jury in this case, so long as Pernoshal paid its contractual obligations to Lurlee. The issue of payment and alleged breach of contract for failure to pay was submitted to the jury and was decided adversely to appellant. There was no error in excluding such irrelevant testimony. *G. E. C. Corp. v. Levy,* 126 Ga. App. 604, 609, supra.

5. Appellant also complains in Enumerations 4 and 5 of the alleged erroneous admission of opinion testimony. A qualified dealer in real estate was allowed to testify that in his opinion the value of Pernoshal's land was of a value of at least $30,000 per acre. Appellant complains that the dealer did not make an appraisal of the land prior to his testimony and that his estimate was for unimproved land zoned for office and industrial use whereas the land in question was zoned for apartment use and was improved. These objections go to the weight of the witness' testimony and not to its admissibility. Appellant never objected to the witness' qualifications or expertise but only as to the remoteness and lack of foundation for the expressed opinion. The trial court did not err in allowing the witness to testify. *Ward v. Handley,* 132 Ga. App. 412 (208 SE2d 189).

6. Appellant also contends that the trial court erred in allowing the resident manager to testify concerning the defects in workmanship in the apartments. This contention is based upon Pernoshal's failure to qualify its witness, the manager, as one possessing the technical competence to identify work involved in the construction of buildings as being defective. The trial court did not allow the witness to testify as to her opinion of the quality of the work. The witness could and did testify only as to actual observations. The court did not err when it allowed the manager to testify as to matters resulting from her personal observation or even to express a lay opinion that the work was not proper when she also testified as to those facts which indicated why the work was improper; i.e., it was done in a workable way on every other occasion and in

730

an unworkable or unwieldy way when done improperly. *Gunter v. Willingham,* 116 Ga. App. 700 (158 SE2d 255).

7. A verdict should not be set aside or a new trial granted where the case had been fairly submitted to the jury on its merits and no rule of law violated nor manifest injustice done, even where there may appear to have been substantial evidence against the verdict, especially if the judge who tried the case is satisfied with the finding. *Edge v. Edge,* 134 Ga. App. 162 (213 SE2d 540); *Giles v. State,* 6 Ga. 276.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

A<small>RGUED</small> J<small>UNE</small> 17, 1975 — D<small>ECIDED</small> S<small>EPTEMBER</small> 18, 1975.

*Cotton, Katz & White, J. Timothy White,* for appellant.
*Gambrell & Mobley, Robert D. Feagin,* for appellee.