## A02A2055. PENDLEY QUALITY TRAILER SUPPLY, INC. v. B & F PLASTICS, INC.
### (578 SE2d 915)

RUFFIN, Presiding Judge.

B & F Plastics, Inc. ("B & F") sued Pendley Quality Trailer Supply, Inc. ("Pendley Quality") for allegedly failing to pay for goods purchased from B & F. Pendley Quality counterclaimed, asserting that B & F was liable for, among other things, fraud and breach of implied and express warranties. Following a jury trial, the trial court directed a verdict in favor of B & F on Pendley Quality's fraud claim. The case was submitted to the jury on the breach of warranty claims, and the jury awarded Pendley Quality $60,000.[1] The trial court then entered judgment notwithstanding the verdict (j.n.o.v.) for B & F, and this appeal ensued. For reasons that follow, we affirm.

1. A trial court properly grants a motion for directed verdict when there is no conflict in the evidence as to any material issue and the evidence, construed most favorably to the party opposing the motion, demands a particular verdict.[2] We review the trial court's grant of such motion under the "any evidence" test.[3]

Viewed in this light, the evidence shows that B & F manufactures rubber products such as mud flaps and rubber wall liners. Pendley Quality, which sells products to the horse trailer industry, purchased rubber wall liners from B & F. The liners had an adhesive backing that used pressure sensitive adhesives (PSA). Pendley Quality distributed the liners to trailer manufacturers, which attached the liners to trailer walls with the PSA backing. Steven Pendley of Pendley Quality testified that, because of the oil in the extruded rubber, he had difficulty finding a PSA that would cause the liner to adhere to the wall of a horse trailer. According to Pendley, he worked with a company called Avery Dennison to develop a PSA that would keep the liner adhered to the wall. Thus, when Pendley initially met Paul Bertsch of B & F to discuss purchasing the liners, Pendley specifically asked that the liners be manufactured using Avery Dennison PSA.

In the spring of 1998, Pendley Quality began receiving complaints from its customers that the wall liners were failing due to improper adhesion. Susan Gentry, an employee of Pendley Quality, investigated the failures. Gentry asked Bertsch whether B & F had changed anything with respect to the liners. Bertsch said no and suggested other causes for the failure, such as a change in the paint used

---

[1] Although the jury also awarded B & F $20,045 on its claim, this is not an issue on appeal.

[2] See *GLW Intl. Corp. v. Yao*, 243 Ga. App. 38, 41 (3) (532 SE2d 151) (2000).

[3] See id.

on trailers. Four or five months later, however, Bertsch informed Gentry that he had switched to a different PSA, which Pendley Quality contends caused the wall liners to fail.[4]

According to Pendley, the wall liner failure ruined his credibility with his customers, several of whom left the company afterward. Nevertheless, Pendley Quality ordered more products from B & F in the summer of 2000. Although Pendley Quality received the goods, it never paid the invoices. After B & F filed suit for nonpayment, Pendley Quality counterclaimed, alleging that Bertsch fraudulently informed him that B & F had not changed the PSA and that such misrepresentation induced Pendley Quality to continue distributing the faulty product to its detriment.

To succeed on its fraud claim, Pendley Quality "must show the following elements: (1) a false representation; (2) scienter; (3) intention to induce [Pendley Quality] to act or refrain from acting; (4) justifiable reliance by [Pendley Quality]; and (5) damages to [Pendley Quality]."[5] The fraudulent misrepresentation must proximately cause the damages.[6] Moreover, "[t]he question of damages cannot be left to speculation, conjecture and guesswork."[7]

Here, the crux of Pendley Quality's complaint is that it lost several customers following a series of wall liner failures, which it attributes to B & F's fraudulent switch of PSAs. Initially, we question whether Pendley Quality presented competent evidence that the PSA failure resulted from the switch. Gentry testified that several reasons could cause a PSA to fail, such as high humidity or faulty installation. In fact, after Pendley Quality switched to a different wall liner manufacturer that used Avery Dennison PSA, the wall liner still failed for one of Pendley Quality's customers.

Assuming, for the sake of argument, that Pendley Quality's wall liner failed because of B & F's switch to a different PSA, Pendley Quality still failed to prove that its customers left the company because of that failure. Gentry named five customers that Pendley Quality lost after the wall liners failed. However, she did not testify as to when the customers left in relation to the failure.[8] And Pendley Quality did not call any of the customers to testify about their rea-

---

[4] Although Pendley claims that Bertsch did not admit to switching PSAs until after suit was filed, Gentry's testimony shows that Bertsch informed the company of the switch during the summer of 1998.

[5] Id. at 41 (3) (a).

[6] See *Capital Constr. Co. v. Professional Svc. Indus.*, 258 Ga. App. 44, 45 (1) (574 SE2d 333) (2002).

[7] *Stovall Tire & Marine v. Prance Body & Fender Works*, 179 Ga. App. 483, 484 (347 SE2d 313) (1986).

[8] Gentry testified that she was *notified* that one of her customers was switching to an entirely different system using a spray-on liner in March 1998. However, this customer continued purchasing wall liners from Pendley Quality for 15 months.

sons for leaving. In fact, the only customer to testify at trial, the president of Silver Star Trailers, said that his company continued purchasing wall liners from Pendley Quality through 1999 — long after Pendley Quality generally stopped using B & F wall liner.[9] Although Pendley and Gentry attempted to explain why customers left, the trial court excluded their testimony as hearsay, a ruling that Pendley Quality does not contest on appeal.

Given these facts, jurors would have been forced to speculate as to why Pendley Quality lost customers.[10] Accordingly, the evidence did not establish that the damages Pendley Quality sustained as a result of the loss of customers stemmed from B & F's alleged fraud. It follows that the trial court properly granted the motion for directed verdict on the fraud count.

2. Pendley Quality also contends that the trial court erred in entering j.n.o.v. on its warranty claims.[11] The trial court found "after thoroughly reviewing the transcript of the proceedings, . . . that there is no evidence in the record to support any causal link between any breach of warranty, if indeed any breach has been shown, and any consequential damages allegedly suffered on the part of [Pendley Quality]."

A trial court properly grants j.n.o.v., "when there can be but one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion."[12] And, in ascertaining whether evidence of damages was presented, we note that

> the ability to estimate damages to a reasonable certainty is all that is required and mere difficulty in fixing the exact amount will not be an obstacle to the award. The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages.[13]

---

[9] The evidence shows that, after using a different company's wall liner exclusively for approximately 15 months, Pendley Quality purchased B & F wall liner again in August 2000. The nonpayment of this purchase serves as the basis for B & F's complaint.

[10] Indeed, the testimony of Pendley, Gentry, and the president of Silver Star Trailers suggests that the manufacturers in the industry are constantly developing new products.

[11] Although Pendley Quality does not specify the claims for which the trial court entered j.n.o.v., it appears that the trial court only submitted to the jury Pendley Quality's claims for breach of express and implied warranties.

[12] (Punctuation omitted.) *Lawrence v. Russell*, 254 Ga. App. 793, 796 (1) (563 SE2d 884) (2002).

[13] (Citation and punctuation omitted.) *McCannon v. McCannon*, 231 Ga. App. 601 (1) (499 SE2d 684) (1998).

When a seller has breached its warranty, a buyer may recover the difference between the price paid for the goods and the value of the goods delivered.[14] A buyer may also recover for lost profits.[15] Pendley Quality sought to recover its lost profits. "It is well settled that there can be no recovery on a claim for loss of expected profits except where such loss can be shown with reasonable certainty."[16]

Here, there is no such certainty. Larry Winter, the accountant who testified on behalf of Pendley Quality, said that before calculating the business losses, he spoke with Pendley and Gentry and reviewed the transcripts from the depositions of Bertsch and another B & F employee. Based upon his investigation, Winter concluded that Pendley Quality lost customers because of the failed wall liners. However, there is no evidence that Winter ever spoke with any of the actual customers to determine their reason for leaving. In other words, the accountant accepted Pendley Quality's explanation for its loss of customers. And because Pendley Quality failed to present an evidentiary basis for its explanation at trial, the damages testimony is fundamentally flawed for the same reasons discussed in Division 1. Thus, the trial court did not err in granting B & F's motion for j.n.o.v.[17]

3. In its final enumeration of error, Pendley Quality contends that the trial court erred in refusing to admit in evidence a customer's testimonial, which the trial court excluded as hearsay. According to Pendley Quality, the document was admissible as a business record.

We will not disturb a trial court's decision to admit or exclude testimony as an exception to the hearsay rule absent an abuse of discretion.[18] OCGA § 24-3-14 (b) permits the admission in evidence of

> [a]ny writing or record . . . made as a memorandum or record of any act, transaction, occurrence, or event . . . if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

---

[14] See *Dixon Dairy Farms v. Conagra Feed Co.*, 245 Ga. App. 836, 837 (538 SE2d 897) (2000).

[15] See *Taylor v. Wilson*, 109 Ga. App. 658, 661 (1) (137 SE2d 353) (1964) (buyer may recover "loss of profits resulting from the breach [of warranty], if not speculative").

[16] *Morey v. Brown Milling Co.*, 220 Ga. App. 256, 259 (6) (469 SE2d 387) (1996).

[17] See id. at 259-260 (trial court properly directed verdict on breach of warranty claim where damages uncertain).

[18] See *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (2) (501 SE2d 30) (1998).

However, "[t]he conclusions, opinions, and impressions of third parties not before the court are not admissible under the business records exception to the rule against the admission of hearsay."[19]

Here, Pendley Quality attempted to introduce the testimonial to establish that a customer's purchasing agent had "commend[ed] the quality of Pendley's services and products." Such commendation does not contain the type of " 'routine facts' whose accuracy is not affected by 'bias, judgment, and memory' " encompassed by the business records exception to the hearsay rule.[20] Under these circumstances, the trial court did not abuse its discretion in excluding the evidence.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED MARCH 10, 2003.

*Minor, Bell & Neal, Robert G. McCurry*, for appellant.
*McCamy, Phillips, Tuggle & Fordham, Robert H. Smalley III*, for appellee.

[19] *Pittman v. State*, 274 Ga. 260, 261 (1) (553 SE2d 616) (2001).
[20] *Brown v. State*, 274 Ga. 31, 33 (549 SE2d 107) (2001).
[1] *Dalton v. State*, 244 Ga. App. 203, 205 (534 SE2d 523) (2000).