A04A0913. AON RISK SERVICES, INC. OF GEORGIA et al. v. COMMERCIAL & MILITARY SYSTEMS COMPANY, INC.
A04A0917. COMMERCIAL & MILITARY SYSTEMS COMPANY, INC. v. AON RISK SERVICES, INC. OF GEORGIA.
(607 SE2d 157)

MILLER, Judge.

Commercial & Military Systems Company, Inc. (CMS) sued Aon Risk Services, Inc. of Georgia (Aon) and Frontier Insurance Company (Frontier) for breach of an oral contract, fraud, and violation of Georgia's Racketeer Influenced and Corrupt Organizations (RICO) Act. The trial court granted summary judgment to Aon on CMS's RICO and fraud claims. The proceedings were stayed as against Frontier because it was in receivership in New York. A jury trial was held on the remaining claim of breach of contract, and the jury awarded CMS lost profit damages in the amount of $1,175,000. In Case No. A04A0913, Aon appeals, arguing that the trial court erred in (1) allowing hearsay, (2) allowing certain expert testimony, (3) allowing the jury to consider lost profits, and (4) instructing the jury on fiduciary relationships. In Case No. A04A0917, CMS appeals from the grant of Frontier's motion to stay and the grant of Aon's motion for summary judgment.

In 1996, CMS, a seller of heavy-duty trucks, entered into a contract with the government of Venezuela to manufacture 450 military trucks for use by the Venezuelan army. CMS entered into a second contract in 1998 with the Venezuelan government to supply spare parts for trucks previously manufactured by CMS. Venezuela required CMS to obtain a performance bond for the 1996 contract and warranty bonds for both the 1996 and 1998 contracts. Aon, a brokerage commercial insurance firm, agreed to assist in posting the needed

warranty bonds for both contracts once CMS paid the required $100,000 premium. Aon used Frontier, an insurance company that sold Aon products, to post the bonds. Frontier was not authorized to do business in Venezuela and hired a "fronting agent," Seguros Caracas de Liberty Mutual (Seguros), to post the bonds. Following receipt of CMS's premium for the bonds, Aon authorized Frontier to post the bonds and Frontier sent a hold-harmless letter to Seguros. CMS later received letters purportedly from the Venezuelan government claiming that the warranty bonds had not been posted. Aon made several attempts to contact Seguros to inquire about the bonds, but got no response. CMS then requested a return of the premium it paid to secure the warranty bonds. Frontier informed Aon that in order for CMS to get its premium returned, it had to obtain a letter from Seguros that the bonds were not posted. CMS did not provide such a letter, and Aon did not return the premiums paid by CMS.

There was also evidence presented at trial that CMS sought to rescind its vehicle and parts contracts due to Venezuela's nonpayment. Finally, CMS claimed that it suffered damages due to Venezuela's failure to get its letter of credit extended. CMS sent a letter to Venezuela stating that it was exercising its right to cancel the contracts.

## *Case No. A04A0913*

1. Aon first contends that the trial court erred in admitting letters purportedly from the Venezuelan government. Specifically, Aon argues that because the letters were not authenticated and did not fall within the business records exception to the hearsay rule, they should not have been admitted for the truth of the matters asserted therein. During trial CMS sought to admit seven letters, written in Spanish,[1] purportedly bearing the seal of the Venezuelan government. Several of these letters notified CMS that Venezuela had not received the required warranty bonds. The trial court admitted each of the letters for the truth of the matters asserted therein.

Under OCGA § 24-3-14 (b),

> [a]ny writing or record . . . made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business *and* that it was the regular course of such business to make the memorandum or record

---

[1] The parties stipulated to the English translation.

at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

(Emphasis supplied.) For a writing to be admissible under OCGA § 24-3-14 (b), a foundation must be laid through the testimony of a witness indicating that he is familiar with the method of keeping the records. *Massey v. State*, 269 Ga. App. 152, 154 (603 SE2d 431) (2004). The witness must also be able to testify that the record was made in the regular course of business, at the time of the event or within a reasonable time of the event. Id. Letters are incompetent as hearsay without the author being available for cross-examination and are generally not business records. *Fletcher v. State*, 199 Ga. App. 756-757 (406 SE2d 245) (1991).

Here, the author was not available for cross-examination, and there was no witness to verify Venezuela's method of keeping records. Thus the trial court abused its discretion when it admitted the letters en masse when there was no possibility that any witness could provide the required testimony. Moreover, the error in admitting the letters was harmful, since they provided the only evidence that the warranty bonds had in fact not been posted. The magnitude of both the error and its consequences requires a new trial in this case.

2. In light of our holding in Division 1, Aon's claim that it did not receive notice of CMS's new expert opinion is moot.

3. Aon also enumerates as error (1) the trial court's charge to the jury on agency and (2) the denial of its directed verdict on CMS's claim for lost profits. Although Division 1 requires a new trial, the issues raised by these enumerations are likely to occur on retrial. We will therefore address them here.

(a) Although there was evidence presented at trial that Frontier was an agent of Aon, Frontier was no longer a party to the action. At the close of evidence, and as the jury considered whether Aon was CMS's agent, the court charged the jury thoroughly on principal/agent relationships, including an agent's fiduciary duty. Aon argues that the instruction was in error because the evidence showed only an arm's length transaction between Aon and CMS.

An agency relationship arises when "one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1; see also *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 606 (1) (a) (503 SE2d 278) (1998). Here the evidence showed that Aon orally agreed to secure the posting of certain bonds for CMS upon CMS's payment of a $100,000 premium. There is no evidence of a confidential relationship between the two parties beyond the contractual obligation. See OCGA § 23-2-58 (confidential relationship of "utmost good faith" arises in principal/agent relationship). Aon did not act on CMS's

behalf in any business transactions and was obligated only to secure the posting of the needed bonds. This was nothing more than an arm's length transaction. "In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." (Citation and punctuation omitted.) *First Union Nat. Bank of Ga. v. Gurley*, 208 Ga. App. 647, 649 (1) (431 SE2d 379) (1993).

Since the jury was considering only whether Aon breached its contract with CMS, the court's instructions had to be directed to the question whether Aon owed CMS a fiduciary duty. We therefore hold that the trial court's charge to the jury on agency and fiduciary relationships was error. Compare *Taylor v. Smith*, 159 Ga. App. 797, 799 (4) (285 SE2d 200) (1981) (court did not err in charging the jury on agency where the evidence showed an agency relationship between real estate broker and the owner of real estate).

(b) Aon contends that the trial court erred in denying its motion for directed verdict on the issue of lost profits. "If any evidence supports the trial court's denial of a motion for directed verdict, this court may not disturb the jury's verdict." (Citation omitted.) *Rome Healthcare v. Peach Healthcare System*, 264 Ga. App. 265, 268 (2) (590 SE2d 235) (2003). Aon argues that CMS (1) did not show that its lost profit damages were the result of Aon's breach, and (2) did not offer evidence showing with reasonable certainty that it suffered lost profits. It is true that "profits which can be traced solely to a breach of contract and are the immediate fruit of the contract, independent of any collateral enterprise, are recoverable." *Signsation, Inc. v. Harper*, 218 Ga. App. 141, 143 (2) (460 SE2d 854) (1995), citing OCGA § 13-6-8. However, "there can be no recovery on a claim for loss of expected profits except where such loss can be shown with reasonable certainty." (Punctuation and footnote omitted.) *Pendley Quality Trailer Supply v. B & F Plastics*, 260 Ga. App. 125, 128 (2) (578 SE2d 915) (2003). CMS presented evidence that the lost profits for the 1998 Spare Parts Contract totaled approximately $515,000, based on the purchase order for those parts ($1,086,000) minus the cost of the parts and shipping. As there was some evidence of lost profits which could have been traced to Aon's failure to secure the posting of the bonds, the trial court did not err in denying the motion for directed verdict on this ground. See *Freightliner Chattanooga v. Whitmire*, 262 Ga. App. 157, 162-163 (1) (584 SE2d 724) (2003); compare *Pendley*, supra, 260 Ga. App. at 128 (2) (lost profits not shown with reasonable certainty where party claimed a loss of customers but no customers were contacted to determine why they left).

*Case No. A04A0917*

4. Frontier, originally a defendant in this case, filed a motion to stay on the ground that a New York trial court issued a rehabilitation order enjoining the commencement or pursuit of any action against Frontier. The trial court granted Frontier's motion pursuant to section 23 of Georgia's Insurers Rehabilitation and Liquidation Act. See generally OCGA § 33-37-1 et seq.; see also OCGA § 33-37-23 (allowing for a stay of collateral proceedings against an insurer). CMS contends that because it was not a party to the New York proceedings and did not receive notice of them, the trial court should not have stayed the proceedings against Frontier. We disagree.

CMS bases its argument on OCGA § 9-11-65 (d), which provides that "[e]very order granting an injunction and every restraining order . . . is binding only upon the parties to the action . . . who receive notice of the order by personal service or otherwise." This disregards the mandate of OCGA § 33-37-23 (a), however, which provides that "[t]he courts of this state *shall* give full faith and credit to injunctions against . . . the continuation of existing actions against the liquidator [or rehabilitator (OCGA § 33-37-3 (14))] or the company, when such injunctions are included in an order to liquidate an insurer issued pursuant to corresponding provisions in other states." (Emphasis supplied.) Id. Here, the New York Order of Rehabilitation provided that "[a]ll persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator. . . ." Therefore, pursuant to OCGA § 33-37-23 (a), the trial court was required to grant a stay as to proceedings against Frontier in order to give full faith and credit to the injunction ordered by the New York court.

CMS's reliance on OCGA § 9-11-65 (d) and *Shaw v. Caldwell,* 229 Ga. 87 (189 SE2d 684) (1972), is misplaced. First, OCGA § 9-11-65 (d) is inapplicable here, since the trial court did not issue an injunction, but granted a stay based on the New York Order of Rehabilitation of which CMS had sufficient notice. Second, the decision in *Shaw* preceded the current Insurers Rehabilitation and Liquidation Act, and was decided under Ga. Code Ann. § 56-1401 (1960), which did not contain the above language requiring Georgia to give full faith and credit to injunctions issued under similar provisions in other states. See *Short v. State of Ga.,* 235 Ga. 394, 395-396 (219 SE2d 728) (1975) (disavowing *Shaw* as outdated). Nor does OCGA § 33-37-23 limit its application to rehabilitation proceedings. Thus, the trial court did not err in granting Frontier's motion to stay.

5. In two enumerations, CMS contends that the trial court erred in granting Aon's motion for summary judgment on CMS's claims for fraud and violation of Georgia's RICO Act. When reviewing the grant

or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

(a) *Fraud.* To establish fraud CMS must present evidence in support of the following elements: (1) false representation by Aon; (2) scienter; (3) intention to induce CMS to act or refrain from acting; (4) justifiable reliance by CMS; and (5) damage to CMS. *Revis v. Jowers*, 264 Ga. App. 13, 15 (1) (589 SE2d 657) (2003). "For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort." (Footnote omitted.) *Bogle v. Bragg*, 248 Ga. App. 632, 634 (1) (548 SE2d 396) (2001).

CMS argues that Aon demanded a $100,000 premium from CMS knowing it could not post the needed bonds. CMS further argues that Aon subsequently represented that the bonds were in fact issued, a representation that was made with a knowing or reckless disregard for the truth. The evidence showed that after Aon received the premium, it instructed Frontier to post the bonds. There is no evidence that at the time Aon requested the premium, it knew that the bonds would not be issued, nor that its belief that the bonds were issued was reckless. Moreover, we see no evidence that Aon ever made a false representation that the bonds had been posted.

> The tort of fraud requires a willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury. In all cases of fraud, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.

(Citations, punctuation and footnote omitted.) *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602, 603-604 (1) (448 SE2d 737) (1994). Here, there is no evidence that Aon intended to deceive CMS by wilfully misrepresenting that it would post the warranty bonds in order to acquire the $100,000 premium.

CMS points to a letter written to Frontier from Aon to establish that Aon committed fraud. The letter requests that Frontier review certain documents. CMS argues that an Aon operative's statement that "I would like to give them an answer by Tuesday because I will be out of the office for the Christmas holiday . . ." indicates that Aon's promise to issue the bonds, as well as its later representation that the bonds were in fact issued, were made with a knowing or reckless disregard for the truth. CMS also argues that a handwritten note on

the letter from a Frontier employee reading "I would not extend any further credit to this account" shows that Aon knew that the bonds would not be issued. On the contrary, neither of these statements shows either an intention not to post the bonds or knowledge that the bonds would not be posted. The letter, dated months after Aon informed Frontier that the bonds were approved, simply asked Frontier for a response on the issues presented. In addition, Frontier's representative stated that his handwritten note referred to not extending any *further* surety credit to CMS other than those bonds that had already been approved, and that the note did not refer to the warranty bonds at issue in this case.

As there is no evidence from which a jury could find each element of fraud, the trial court did not err in granting Aon summary judgment on CMS's fraud claim.

(b) *RICO.* Under Georgia's RICO Act, "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16-14-4 (a). A "pattern of racketeering activity" means engaging in at least two incidents of racketeering activity. OCGA § 16-14-3 (8) (A). CMS contends that Aon committed the predicate acts of theft by conversion, theft by deception, and mail and wire fraud. There is no evidence, however, that Aon obtained CMS's premium by deceitful means with the intention of depriving CMS of those funds, or that Aon knowingly converted the funds to its own use in violation of the oral agreement. See OCGA §§ 16-8-3 (a); 16-8-4 (a). Indeed, the evidence showed that once Aon received the premium, it instructed Frontier to proceed with posting the bonds. It was only until after being contacted by CMS that Aon was put on notice that there was a problem with the posting of the bonds. As CMS's claims of theft are not supported by the record, CMS has failed to show two predicate acts to support a pattern of racketeering activity. See *Jordan v. Tri County Ag*, 248 Ga. App. 661, 666-667 (5) (546 SE2d 528) (2001). Therefore, the trial court did not err in granting summary judgment to Aon on CMS's RICO claim.

*Judgment reversed in Case No. A04A0913. Judgment affirmed in Case No. A04A0917. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 5, 2004 —
RECONSIDERATION DENIED NOVEMBER 19, 2004 —

*Alston & Bird, Theodore J. Sawicki, Scott P. Hilsen, Regina S. Molden, Smith, Currie & Hancock, John E. Menechino, Mark E. Farrell, Jr., Duc T. Tran,* for Aon Risk Services, Inc. et al.

*Hull, Towill, Norman, Barrett & Salley, Edward J. Tarver, Patrick C. Smith, Jr., Thomas L. Cathey, Benjamin F. McElreath,* for Commercial & Military Systems Company, Inc.