A05A1646. GREENE et al. v. BRYANT et al.
(626 SE2d 185)

RUFFIN, Chief Judge.

Antebellum Homes, Inc. and its owner, Douglas Dountz, built a house for George and Elaine Greene. Following completion of the house, a subcontractor filed suit against Antebellum Homes and Dountz, who then filed a third-party complaint against the Greenes, asserting that the Greenes breached their contract with Antebellum Homes.[1] The Greenes counterclaimed against Antebellum Homes and Dountz, alleging, inter alia, that Antebellum Homes and Dountz had breached the contract, negligently constructed the home, and breached an express warranty. The Greenes sought attorney fees and damages. Following trial, a jury found the Greenes liable to Antebellum Homes and Dountz for money owed under the contract, but awarded no damages, and the trial court entered judgment on the verdict.

The Greenes appeal, arguing that the evidence demanded a verdict in their favor. The Greenes also assert that the trial court abused its discretion in admitting certain evidence during trial. For reasons that follow, we affirm.

" 'Where a jury returns a verdict and it has the approval of the trial judge, we must affirm on appeal if there is any evidence to support it.' "[2] Viewed in this manner, the evidence shows that Dountz owns Antebellum Homes, a general contracting company that builds

---

[1] Antebellum Homes and Dountz also added numerous subcontractors to its third-party complaint, but none of the other third-party defendants is a party to this appeal.

[2] *Vojnovic v. Brants*, 272 Ga. App. 475 (612 SE2d 621) (2005).

custom homes. In 1998, the Greenes signed a contract with Antebellum Homes to build a house. Under the contract, the Greenes agreed to pay for "the cost of the work and materials, and a [c]ontractor's fee of 10% of the actual cost of the dwelling." The estimated cost of the home was approximately $1.7 million.

After the contract was signed, Antebellum Homes obtained the building permit and began construction in September 1998. The Greenes made several major changes to the contract, including the addition of a concrete wall in the basement, a pond, and a cabana. According to Dountz, the Greenes wanted the house completed in time for a December 1999 millennium party. Antebellum Homes worked weekends in order to make the house habitable by that time, and the Greenes moved into the house in December 1999. However, there was more work to be done on the house, and Antebellum Homes continued working on the property in 2000.

In either January or February 2000, while Antebellum Homes was working on the cabana, George Greene told Dountz that he was having financial difficulties and thus wanted work stopped on the cabana and to "tailor things back a little." However, work continued on the home until April 2000 when Dountz told George Greene that he needed to be paid in order to continue. Although the Greenes had paid $2,022,027, the total construction cost of the home when they stopped payment was approximately $2,117,000, leaving a balance of over $95,000. According to Dountz, he paid the subcontractors out of his pocket, but several suppliers remained unpaid.

Litigation commenced when one of the suppliers filed suit against Antebellum Homes. Antebellum Homes then filed its third-party complaint against the Greenes, who counterclaimed, alleging that the house had been negligently constructed. According to the Greenes, after moving into the house, they noticed numerous defects. They retained an expert witness who testified at trial regarding myriad problems with the house, including problems with cracks in the driveway, the stucco installation, and drainage. Antebellum Homes also presented the testimony of two experts, both of whom agreed that some work needed to be done on the house.

Before trial, the Greenes put the house on the market for $2.9 million, and it eventually sold for $2.8 million, with $100,000 held in escrow for repairs to the home. Before selling the house, the Greenes apparently reached a settlement with several of the subcontractors, including $60,000 for stucco-related claims.

Following trial, the jury found that the Greenes were "liable for money owed to Antebellum Homes under the construction contract."

However, the jury awarded zero damages.[3] With respect to the Greenes' counterclaim, the jury found that Antebellum Homes was *not* "liable to [them] for damages associated with the construction of their house."

1. On appeal, the Greenes contend that "there was no evidence to support the verdict that [they] were not entitled to a monetary recovery." Stated in the positive, the Greenes essentially argue that, based on the evidence presented, they were entitled to judgment as a matter of law, notwithstanding the jury's verdict. However, the Greenes never raised this argument before the trial court either by motion for directed verdict, judgment notwithstanding the verdict, or motion for new trial and are thus precluded from raising such argument on appeal.[4]

Moreover, even if the Greenes had preserved the issue on appeal, we would find no basis for reversal. The crux of the Greenes' argument is that they were entitled to recover because all of the evidence — including the expert testimony tendered by Antebellum Homes — showed that there were "problems" with the house. However, the evidence shows that Antebellum Homes was still working on the house when the Greenes stopped paying. Thus, Antebellum Homes ceased work on the residence. Under these circumstances, the jury was authorized to find that the house was simply incomplete and that the Greenes had essentially received that for which they had paid.

2. The Greenes also contend that the trial court abused its discretion in admitting evidence that, at the time of the trial, George Greene was incarcerated for a bribery conviction. Pursuant to OCGA § 24-2-2, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." Here, the trial court admitted the evidence, finding it relevant to the Greenes' claim for attorney fees.

We fail to see how George Greene's conviction for bribery is relevant to his claim that Antebellum Homes and Dountz were stubbornly litigious and/or acted in bad faith. Nonetheless, we find no basis for reversal. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful."[5] Here, the Greenes do not show how they were harmed by admission of the

---

[3] Antebellum Homes has not appealed the jury's verdict.

[4] See *DI Uniform Svcs. v. United Water &c.*, 254 Ga. App. 317, 318 (1) (562 SE2d 260) (2002); *McDevitt & Street Co. v. K-C Air Conditioning Svc.*, 203 Ga. App. 640, 642 (1) (418 SE2d 87) (1992); *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858, 861 (7) (360 SE2d 418) (1987). Although the Greenes moved for partial summary judgment, the motion was withdrawn before the trial court issued its ruling. Cf. *DI Uniform Svcs.*, supra.

[5] (Punctuation omitted.) *Gantt v. Bennett*, 231 Ga. App. 238, 242 (3) (499 SE2d 75) (1998).

evidence. They merely assert that the evidence "did no more than inflame the jury against [them]." Although the jury found against the Greenes, it awarded no damages. Under the unique circumstances of this case, it does not appear that the jury was "inflamed" against the Greenes.[6] And we are disinclined to set aside a verdict where, as here, the case was fairly submitted to the jury on its merits and it appears that no manifest injustice was done.[7]

3. In their final enumeration of error, the Greenes contend that the trial court abused its discretion in admitting a Fulton County inspection report as a business record. The report indicated that the framing of the house had passed inspection. According to the Greenes, the trial court erred in admitting the report since it was not properly authenticated.

A trial court properly admits a business record if the evidence shows that the record was made in the ordinary course of business, was not opinion testimony, and was properly identified by the person who made it or is conversant with the necessity for its preparation and custody.[8] For evidence to be admissible as a business record, "a foundation must be laid through the testimony of a witness indicating that he is familiar with the method of keeping the records."[9] Here, no such foundation was laid and thus the trial court abused its discretion in admitting the inspection report as a business record.[10]

Nevertheless, we find no basis for reversal. On direct examination, Dountz testified that he hired "a Georgia-licensed, certified structural engineer ... [to] inspect the entire framing of this home. He found a few problems. We corrected those problems. He [came] back and passed the home." The Greenes did not object to this testimony. Under these circumstances, the report was merely cumulative of Dountz's testimony that the framing passed inspection, and reversal is inappropriate where the improperly admitted evidence is merely cumulative of other evidence already admitted.[11]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JANUARY 11, 2006.

---

[6] See id.

[7] See *Lurlee, Inc. v. Pernoshal-39 Co.*, 135 Ga. App. 724, 730 (7) (218 SE2d 701) (1975).

[8] See *Sheppard v. Sheppard*, 229 Ga. App. 494, 495 (2) (494 SE2d 240) (1997).

[9] *Aon Risk Svcs. &c. v. Commercial & Military Systems Co.*, 270 Ga. App. 510, 512 (1) (607 SE2d 157) (2004).

[10] See id.

[11] See *In re Vincent*, 240 Ga. App. 876, 880 (3) (525 SE2d 409) (1999); *In the Interest of D. S.*, 176 Ga. App. 482, 485 (3) (336 SE2d 358) (1985).

*Theodore H. Lackland*, for appellants.

*Swift, Currie, McGhee & Hiers, Stephen M. Schatz, Melissa K. Kahren, Bischoff & White, Brian S. Bischoff, James E. Bischoff, Paul S. Liston, Howard G. Slade*, for appellees.

